James W. DANIEL, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–8706–CR–532.

Supreme Court of Indiana.

Aug. 15, 1988.

Howard Howe, Mears & Crawford, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Donald B. Kite, Sr., Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On February 5, 1987, a jury found James W. Daniel guilty of Robbery, a class C felony, and Confinement, a class D felony. He was also found to be a habitual offender. He was sentenced to eight (8) years for the robbery count, with an enhancement of thirty (30) years for the habitual offender finding. He was further sentenced to four (4) years on the confinement count, the sentences to be served concurrently. Daniel directly appeals, raising the following issues for our review:

1. whether the court erred in admitting Officer Carel's testimony regarding a radio dispatch he received;

2. whether the court erred by admitting into evidence photographs of three one dollar bills and the receipt of the serial numbers;

3. sufficiency of the evidence;

4. whether the court erred by overruling Daniel's objection to the late filing of the habitual offender information;

5. whether the court erred by admitting into evidence State's exhibits 25 and 29 during the habitual offender phase of trial because they referred to the original charges for which Daniel was not convicted in addition to the predicate felonies alleged by the State.

The facts most favorable to the verdict below show that at approximately midnight on February 14, 1986, a negro male entered the Village Pantry at 1634 South State Street in Indianapolis, Indiana. The man was identified at trial as Appellant Daniel by Teresa Von Burg, the cashier working at this time. That night Daniel inquired of Von Burg about employment opportunities with the Village Pantry, then asked Von Burg when the store manager would be in. After Von Burg indicated the manager would return in the morning, Daniel entered the rear area of the store despite Von Burg's protest that he was not allowed into that area. Daniel backed Von Burg up, stating he wanted the money. When Daniel repeated himself, Von Burg reached into the cash register drawer and handed Daniel $3.00 in bait money, and the remaining $28.00, which were in the drawer. Von Burg had earlier paperclipped together two packets of ten $1.00 bills. Eight dollars of the $28.00 were loose. Von Burg testified she was scared during the robbery. Minutes after Daniel left the store, a police officer arrived and interviewed Von Burg. Von Burg described Daniel and what had occurred. The officer then dispatched Von Burg's description of Daniel over her police radio.

At approximately 12:17 a.m. on February 15, 1986, Indianapolis Police Officer Steven Carel proceeded to the vicinity of State and Minnesota streets after he was notified of the CIP hold-up alarm at the Village Pantry. Officer Carel then received a radio dispatch which contained a description of the robber and indicated the robber had left the Village Pantry and was last seen running around the rear of the store. Based on his prior experience in the area, and apparently the radio dispatch as well, Officer Carel drove to Palmer Street and then began to drive in a westerly direction. After Officer Carel shined his light into another car, which was facing him, he observed that the driver was a black male. Officer Carel approached the other car on foot in order to determine if the driver

matched the description contained in the radio dispatch.

Von Burg was later brought to the scene and identified the driver of the other car as the individual who had robbed the Village Pantry. Police officers immediately searched Daniel. Officer Carel found $31.00, including two packets of ten $1.00 bills which had been paperclipped together, eight loose dollars and the three $1.00 bills in bait money which Indianapolis Police Detective Sergeant Gerald Hilligoss had placed in the Village Pantry alarm's spring clip of the CIP alarm which he had earlier installed in the Village Pantry cash register drawer. The alarm was designed to transmit a radio signal to the police, and to activate a camera, when someone removed the bait money. Detective Sergeant Hilligoss also placed a roll of film in the camera and the list of serial numbers from the bait money, which he had recorded prior to stapling the bait money together and placing it in the alarm's spring clip, in the box which contained the camera. The three $1.00 bills found on Daniel were still stapled together as they had been when they were placed in the alarm's spring clip and their serial numbers were identical to the serial numbers which had been recorded by Detective Sergeant Hilligoss.

## I

 Daniel claims the court erred in permitting Officer Carel to testify as to statements made to him by radio by another officer concerning the activities of a negro male in the vicinity of the Village Pantry in question. However, a police officer's testimony regarding the contents of a radio broadcast which he received does not constitute hearsay if it is offered either to show the receipt of the information or to explain subsequent police actions, rather than to prove the truth of the matters asserted in the statement. *Mulligan v. State* (1986), Ind., 487 N.E.2d 1309, 1313; *Rhoton v. State* (1985), Ind., 483 N.E.2d 51, 53; *Wagner v. State* (1985), Ind., 474 N.E. 2d 476, 491. Here, the record indicates Officer Carel's testimony concerning the radio broadcast, which included both the description of the robber and the fact that

the individual had left the Village Pantry and was last seen running around to the back of the store, was objected to on the ground that the officer could not testify as to what he received from another officer via the broadcast unless that other officer was called as a witness. The deputy prosecutor responded the testimony was to show why Officer Carel did what he did. Officer Carel's testimony was offered to explain the direction and focus of his investigation subsequent to his receipt of the broadcast. Thus, the trial court did not err in permitting Officer Carel to testify regarding the radio broadcast.

## II

Daniel claims that the court erred by admitting into evidence State's Exhibits 23 and 24, photographs of three one dollar bills and the receipt of the serial numbers, over his objection that the State failed to establish a proper chain of custody. Daniel asserts the exhibits could have been altered or otherwise tampered with.

Detective Sergeant Hilligoss testified he had placed the three $1.00 bills in bait money which were stapled together in the cash register drawer. Prior to this, Hilligoss had recorded the serial numbers of the dollar bills on a piece of paper. He hid the list of serial numbers inside the box containing the camera that was operated when the bait money was pulled out of the bill trap. Hilligoss testified that the camera and an alarm would be activated if the bait money was removed from the bill trap. He testified that while either he or the officer on call would be notified anytime the alarm was activated, he had not been notified that either the alarm or camera had been triggered between the day he loaded the camera with film and placed the bait money in the bill trap, and the day of the robbery. Shortly after he received the broadcast of a robbery in progress Hilligoss recovered the list of serial numbers from the camera box. Minutes after the robbery, after Daniel was apprehended and searched, Carel and Hilligoss compared the bait money found on Daniel with the list of bait money serial numbers which Hilligoss

had removed from camera box. The officers discovered that the serial numbers were identical and Officer Carel then made a notation on each of the bills and on the Police Department property envelope which he then placed the bills in. Officer Carel took the envelope to the police property room. Hilligoss testified the dollar bills were kept in the envelope until after Daniel's trial began. The list of serial numbers was photographed. Hilligoss testified he retained possession of the list of serial numbers after Daniel was arrested.

If an item possesses characteristics which are thoroughly unique and relatively impervious to change the trial court has broad discretion to admit this exhibit merely based on testimony that the item is the one in question and is in a substantially unchanged condition. *Russell v. State* (1988), Ind., 519 N.E.2d 549, 553; *Dier v. State* (1982), Ind., 442 N.E.2d 1043, 1046. Hilligoss' testimony supplied this information and the trial court did not err in admitting the exhibits into evidence.

### III

Daniel challenges the sufficiency of the evidence supporting the verdict. He claims the State failed to prove the essential elements of robbery and confinement beyond a reasonable doubt. As a court of review, we do not judge the credibility of witnesses nor reweigh the evidence. Rather, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, cert. denied 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Regarding the robbery conviction, Daniel argues the State failed to establish he took property from Von Burg by putting her in fear, as required pursuant to Ind. Code 35–42–5–1. He contends the record clearly shows Von Burg's fear was not of Daniel, but rather of a memory of a robbery which had occurred before. Daniel claims he merely asked Von Burg for money and did not touch her or physically force her to do anything. Regarding the confinement conviction, Daniel claims the State failed to prove that Von Burg was confined without her consent by Daniel knowingly or intentionally, as required pursuant to Ind. Code 35–42–3–3.

These arguments are not supported by the record. The jury could reasonably have concluded from Von Burg's testimony that Daniel took Village Pantry's money by putting Von Burg in fear, that Daniel was not merely asking for money, and that Von Burg did not freely choose to remain in the Village Pantry following the robbery. Von Burg testified at trial that she had given him the money because she did not want to find out what he wanted to do if she did not. When asked what she meant, she replied, "I was scared." Von Burg testified she went to the deli counter after Daniel took the money because Daniel told her to do so. She also testified she did not try to leave the store because he was right beside her and if she had tried to leave, he could have grabbed her very easily. While Von Burg did allude in her testimony to the fact that she had previously been robbed, she did not testify that she was put in fear as a result of the prior robbery. Instead, Von Burg testified that when Daniel asked her for the money in the cash register, she could not believe it because she had previously been robbed. Thus, the jury could reasonably have concluded based on Von Burg's testimony that Daniel had taken Village Pantry's money from her by putting her in fear. Von Burg's fear was reasonable given the fact Daniel had backed her up and said he wanted the money. Further the jury could reasonably have concluded that Daniel had confined her knowingly or intentionally without her consent. As there was sufficient evidence to sustain Daniel's convictions for robbery and confinement, the convictions were not contrary to law.

### IV

Daniel claims the court erred by failing to sustain his objection to the late filing of the habitual offender allegation. He as-

serts a misunderstanding about his acceptance of the State's plea bargain resulted in the prejudicial lodging of the habitual offender allegation which denied him his right to proper notice and his right to prepare. Daniel notes that while the State's original Information was filed on February 18, 1986, the State did not file its Notice of Filing of Habitual Offender until January 14, 1987, which was nearly nine months after the Omnibus date of April 16, 1986 and less than three weeks prior to trial.

 The issue of whether the State could pursue its habitual offender allegation although it was filed late has been waived as a result of Daniel's failure to object on this basis either before or during his trial. A defendant must object at trial in order to preserve an alleged error for appeal. *Salahuddin v. State* (1986), Ind., 492 N.E.2d 292, 296. A party may not object on one basis at trial and argue a different basis on appeal. *Gross v. State* (1987), Ind., 506 N.E.2d 17, 19. Daniel did not object at trial on the ground that the State's habitual offender allegation had been filed late, but he did object claiming the allegation constituted cruel and unusual punishment and subjected him to double jeopardy. Also, on the first day of trial, Daniel complained that he had assumed both that his plea agreement would be presented to the trial court, and that the State would not file a habitual offender allegation. As no objection was made at trial to the late filing of the habitual offender allegation, this allegation of error has been waived.

 Further, Daniel may not now complain of an inadequate opportunity to prepare his defense as he did not move for a continuance on the ground that the State's amendment of the original information through its filing of the habitual offender allegation prejudiced his rights. *Riley v. State* (1987), Ind., 506 N.E.2d 476, 478; *Murphy v. State* (1986), Ind., 499 N.E.2d 1077, 1083. Because Daniel did not object at trial and because he failed to request a continuance pursuant to Ind. Code 35–34–1–5(c), he has waived the issue of the State's late filing of the habitual offender allegation.

 Moreover, Daniel has failed to demonstrate that he was prejudiced by the State's late filing of its habitual offender allegation. A defendant who challenges the State's filing of an habitual offender allegation on the ground that it is filed outside of the time specified in Ind. Code 35–34–1–5(b)(1), must demonstrate that he was prejudiced. *Russell v. State* (1986), Ind., 487 N.E.2d 136, 137–38. Daniel claims only that his rights to proper notice and preparation were violated when the State filed its Notice of Filing Habitual Offender approximately three weeks prior to his trial. Daniel's assertion is insufficient, particularly as it is raised here for the first time to establish that he was in fact prejudiced. Daniel does not contend that he had insufficient time to prepare for the habitual offender phase of his trial, that he was unable to obtain evidence to marshal on his behalf, or that he did not have sufficient time to investigate his prior convictions in order to determine if grounds for collateral attack existed. Accordingly, since Daniel has not presented any explanation of the manner in which he was prejudiced by the timing of the additional charge, his request that we vacate his conviction on these grounds is denied.

 Daniel alleges the State should have been precluded from filing the habitual offender allegation regardless of when it was filed because the State was bound by a promise that it made to him during plea negotiations. However, prior to commencement of trial, at the hearing on Daniel's objections to the late filing, both the deputy prosecutor and Daniel's trial counsel indicated that no plea agreement had been entered into by the parties. Daniel admitted at that time he had initially rejected the plea agreement. Thus, this issue presents no error.

### V

Daniel asserts the court erred by admitting into evidence State's exhibits 25 and 29, over objections, during the habitual offender phase of trial because they charged

crimes for which Daniel was not convicted and their prejudicial effect outweighs their probative value. State's exhibits 25 and 29 were copies of indictments that referred to the original charges for the felonies alleged by the State as predicate felonies for habitual offender purposes. Daniel claims these exhibits should not have been admitted into evidence because they contained charging informations alleging crimes for which Daniel was not subsequently convicted. He complains no explanation was given the jury concerning the prejudicial discrepancy between charged offenses and the offenses for which Daniel was convicted.

 In determining whether a defendant has been prejudiced by the introduction of documentary evidence which refers not only to the offenses of which he was convicted or "the predicate offenses", but also to the original charges which led to his conviction of the predicate offenses, this court has examined the documentary evidence and looked to what occurred during the habitual offender phase of the defendant's trial. Where the State's documentary evidence clearly reflects the relationship between the original charges and the predicate felonies, or where the jurors are instructed when they examine the evidence that the defendant's convictions were for lesser included offenses and the original charges should not be considered during their deliberations, the defendant is not prejudiced by the trial court's admission of the evidence. *Young v. State* (1987), Ind., 508 N.E.2d 24, 26; *Meredith v. State* (1987), Ind., 503 N.E.2d 880, 883; *Badelle v. State* (1982), Ind., 434 N.E.2d 872, 877.

Here the relationship between the original charges and the predicate offenses was clearly reflected by the documentary evidence. While State's exhibit 25 indicated Daniel had originally been charged with Inflicting Physical Injury While In Commission of a Felony, the relationship between this charge and his Theft of a Motor Vehicle conviction was clearly reflected by State's exhibits 26 and 28, the order book entry and commitment paper in cause number CR 69 0673. Similarly, while State's exhibit 29 informed the jury that Daniel

had originally been charged with Second Degree Murder, State's exhibits 30 and 32, the order book entry and commitment paper in cause number CR 71 1411, clearly delineate the relationship between this charge and Daniel's Voluntary Manslaughter conviction. Because the relationship between the original charges and the predicate offenses was clearly reflected by the State's documentary evidence, the trial court did not err in admitting State's exhibits 25 and 29 into evidence.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs in result without separate opinion.