## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 31 2015, 10:03 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Marion County Public Defender's Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rodney L. Blakely,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 31, 2015

Court of Appeals Cause No.
49A02-1406-CR-391

Appeal from the Marion Superior Court

Lower Court Cause No.
49G05-1311-FC-72982
49G05-1310-FD-69637

The Honorable Grant W. Hawkins, Judge

**Pyle, Judge.**

## Statement of the Case

[1]     In this consolidated appeal, Rodney L. Blakely ("Blakely") appeals, following two separate bench trials, his two convictions for Class C felony criminal

confinement[1] in one cause and his conviction for Class D felony strangulation in another cause.[2] Blakely presents an argument only on his criminal confinement convictions and contends that the evidence was insufficient to support his convictions. Concluding that the trial court, acting as factfinder, could have reasonably inferred that Blakely knowingly confined his victims without their consent, we affirm his conviction.

We affirm.

## Issue

Whether sufficient evidence supports Blakely's criminal confinement convictions.

## Facts

On October 25, 2013, Blakely and his girlfriend, Miss Macklin ("Macklin"), were in their apartment and became involved in an argument that evolved into Blakely putting his hands around Macklin's throat and choking her. That same day, the State charged Blakely with Class D felony strangulation and Class A

---

[1] IND. CODE § 35-42-3-3(a)(1)(b)(1)(C). We note that, effective July 1, 2014, a new version of this criminal confinement statute was enacted and that Class C felony criminal confinement is now a Level 5 felony. Because Blakely committed his crimes in 2013, we will apply the statute in effect at that time.

[2] I.C. § 35-42-2-9. The strangulation statute was also amended effective July 1, 2014, and Class D felony strangulation is now a Level 6 felony.

misdemeanor battery under cause number 49G05-1310-FD-069637 ("Cause 13-069637"). Thereafter, the trial court issued a protective order against Blakely.

[5] A couple of weeks later, during the early morning hours of November 9, 2013, Macklin was in her apartment with Leslie Johnson ("Johnson"). A little before 5:00 a.m., Blakely began banging on Macklin's apartment door. Macklin answered the door, noticed that he "was drunk[,]" and then let him in. (Tr. 47). Blakely began yelling at Macklin because she had not answered her phone, and then he threw a tote against the wall. Blakely was loud and "upset[,]" and Macklin tried to calm him down as they sat in the living room. (Tr. 48).

[6] Meanwhile, Johnson—who was aware of the prior domestic violence incident between Blakely and Macklin—came out to the living room, asked for Macklin's address, then returned to the bedroom and called the police. The Lawrence Police Department received the dispatch that "a female was calling for help[,]" and Officer Jeffrey Gray ("Officer Gray") and other officers responded to the scene around 5:30 a.m. (Tr. 67). At that time, Johnson was in the living room with Macklin and Blakely. When the police knocked on the door and announced their presence, Blakely told Macklin and Johnson to "be quiet[,]" "stay still[,]" and "don't answer the door." (Tr. 18, 40, 51). When no one answered the door, the police left.

[7] Thereafter, Johnson again called the police who were then dispatched back to Macklin's apartment. When police knocked, again, no one answered. At that point, the police learned that the reason for the dispatch involved Blakely, with

whom they had recently had a previous encounter. Because of the history that the police had with Blakely in the prior case and "due to what was said to dispatch," Officer Gray "contacted [his] supervisor and advise[d] of the situation[,] and they proceeded to start the SWAT team." (Tr. 71).

[8] Around 6:19 a.m., Sergeant James Vaughan ("Sergeant Vaughan"), who was the SWAT commander, received a dispatch to go to Macklin's apartment because there was "a person barricaded with a couple of hostages[.]" (Tr. 74). Sergeant Vaughan received information that there was "a person that . . . was potentially armed and two hostages and one was a victim from a week before, [of] some kind of domestic battery" and that "there was a protective order in place." (Tr. 74). The police called Blakely's phone, but he did not answer.

[9] Over the next few hours, Sergeant Vaughan kept in contact with Johnson via text messages. He texted with Johnson to confirm that they were in the apartment and to determine if they were able to leave the apartment. Johnson texted that they were not able to leave and that they did not want Blakely to know that they were talking to the police. When the sergeant texted and asked Johnson if they could leave the apartment, she responded, "No can't leave[.]" (State's Ex. 1 at 4).

[10] Thereafter, the police made announcements with a loud speaker, directing Blakely to come out of the apartment, but he did not. At that time, Blakely, Macklin, and Johnson were in the bedroom, and he told Johnson and Macklin "to hush." (Tr. 36). After the police confirmed with Johnson that the three of

them inside the apartment could hear the announcement to exit the apartment, the SWAT team discharged tear gas into the apartment through the bedroom window, which then resulted in eye injuries to those in the apartment. Thereafter, the SWAT team entered the apartment and arrested Blakely. The State then charged Blakely with two counts of Class C felony criminal confinement under cause number 49G05-1311-FC-072982 ("Cause 13-072982").

[11] On May 5, 2014, the trial court held separate bench trials in the two causes. In Cause 13-072982, Macklin, Johnson, Officer Gray, and Sergeant Vaughan testified to the facts above. The State also introduced into evidence State's Exhibit 1, which were Johnson's text messages with police, and State's Exhibit 2, which was a recorded history of the 911 calls and all communications that occurred between the police and Johnson inside of the apartment.

[12] After the State rested, Blakely testified on his own behalf and denied that he told Macklin and Johnson to stay quiet or prevented them from answering the door or leaving the apartment. He testified that he, instead, told them to leave the apartment. The trial court found Blakely guilty as charged.

[13] Later that same day, the trial court held a bench trial in Cause 13-069637. The trial court found Blakely guilty of Class D felony strangulation and not guilty of Class A misdemeanor battery.

[14] On May 14, 2014, the trial court held a consolidated sentencing hearing for both causes. In Cause 13-069637, the trial court imposed a two (2) year

executed sentence for Blakely's Class D felony strangulation conviction. In Cause 13-072982, the trial court sentenced Blakely to seven (7) years executed in the Department of Correction for each of his Class C felony criminal confinement convictions and ordered that these sentences be served concurrently to each other and consecutively to his sentence in Cause 13-069637.

Blakely commenced an appeal from both causes and then sought, and was granted permission, to consolidate his appeal from his convictions for criminal confinement under Cause 13-072982 with his appeal from his conviction for Class C felony strangulation under Cause 13-069637. On appeal, however, he does not raise any argument in regard to his strangulation conviction; instead, he appeals only his criminal confinement convictions.

## Decision

Blakely argues that the evidence was insufficient to support his two Class C felony criminal confinement convictions.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence

overcome every reasonable hypothesis of innocence. The
evidence is sufficient if an inference may reasonably be drawn
from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks
and citations omitted) (emphasis in original).

[18] To sustain Blakely's convictions for Class C felony criminal confinement as
charged, the State was required to prove beyond a reasonable doubt that
Blakely "knowingly confine[d]" Macklin and Johnson "without [their] consent"
"by refusing to allow [them] to leave the residence" and that the confinement
"resulted in bodily injury" to them. *See* I.C. § 35-42-3-3(a)(1)(b)(1)(C); App. 19.
To "confine" means "to substantially interfere with the liberty of a person."
I.C. § 35-42-3-1.

[19] Blakely argues that the "only question in this case is whether [he] refused to
allow the women to leave the apartment." (Blakely's Br. 5). Blakely contends
that the evidence that he told them to be quiet and not answer the door was not
sufficient to show that he refused to allow them to leave the apartment because
it did not show that he "substantially interfered with [their] liberty and forced
[them] to stay in the apartment without [their] consent." (Blakely's Br. 6).
Blakely cites to certain parts of Macklin's and Johnson's testimony, arguing that
he did not confine them but that they "voluntarily complied with his instruction
to not open the door." (Blakely's Br. 6).

[20] We disagree with Blakely's suggestion that the State was required to show that
Blakely used force when confining the women. The State did not charge

Blakely with committing criminal confinement by the use of force or threat of force. *Compare* I.C. § 35-42-3-3(a)(1) (subsection charged in this case) *with* I.C. § 35-42-3-3(a)(2) (subsection involving removing a victim, by use of force or threat of force, from one place to another).

[21] Also, the evidence presented by the State was sufficient to show that Blakely confined the women without their consent. Blakely, who was drunk and had a protective order in place to stay away from Macklin, arrived at her apartment in the early morning hours and pounded on her door until she let him in the apartment. Once inside, he was loud and upset, and Johnson called the police. Johnson testified that when the police knocked on the door and Blakely told her to be quiet and not answer the door, she took it as a command. Johnson testified that she did not consent or want to remain in the apartment during the course of the three hours and that she did not feel free to leave the apartment because of Blakely. Macklin testified that she was supposed to go to work at 6:00 a.m. and that she wanted to go but did not "[b]ecause of the incident that was occurring at that time" with Blakely coming to the apartment and telling her not to answer the door. (Tr. 53). She also testified that she did not answer the door or leave because Blakely had "a temper" and she did not want to "aggravate" him or "make a situation worse." (Tr. 52). Additionally, Macklin testified that she "wanted to be out of there" and that they were "there too long[.]" (Tr. 55).

[22] Based on the evidence presented, it was reasonable for the trial court, as factfinder, to have drawn an inference that Blakely knowingly confined Macklin

and Johnson without their consent when he came into Macklin's apartment, with a protective order in place, and commanded Macklin and Johnson to stay quiet and to not answer the door when the police knocked. *See, e.g., Daniel v. State*, 526 N.E.2d 1157, 1161 (Ind. 1988) (holding that there was sufficient evidence to support the defendant's criminal confinement conviction where the victim, who did not try to leave the inside of the Village Pantry, testified that she did not freely choose to remain in the building and that she did so because of defendant); *Bunch v. State*, 937 N.E.2d 839, 850 (Ind. Ct. App. 2010) (explaining that establishment of a lack of consent can be inferred from the evidence), *trans. denied*. *See also Tin Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014) (explaining that "when determining whether the elements of an offense are proven beyond a reasonable doubt, a fact-finder may consider both the evidence *and the resulting reasonable inferences*") (emphasis in original).

[23] Blakely's argument—which in essence challenges the weight the trial court applied to parts of Macklin's and Johnson's testimony—is nothing more than an invitation to reweigh the evidence, which we will not do. *See Drane*, 867 N.E.2d at 146. Because there was probative evidence from which the factfinder could have found Blakely guilty beyond a reasonable doubt of two counts of Class C felony criminal confinement, we affirm his convictions. *See id.* at 147 n.4 (stating that "appellate courts must affirm 'if the probative evidence and reasonable inferences drawn from that evidence *could* have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt'") (quoting

*McHenry,* 820 N.E.2d 124, 126 (Ind. 2005) (quoting *Tobar v. State,* 740 N.E.2d 109, 112 (Ind. 2000))) (emphasis in original).

[24] Affirmed.

Barnes, J., and May, J., concur.