FILED

Sep 12 2023, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Casandra J. Nelson
Law Office of Casandra J. Nelson, LLC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Monika P. Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the
Commitment of:

B.A.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

September 12, 2023

Court of Appeals Case No.
23A-MH-632

Appeal from the Hamilton
Superior Court

The Honorable Michael A. Casati,
Judge

Trial Court Cause No.
29D01-2302-MH-18

**Opinion by Judge Mathias**
Judges Vaidik and Pyle concur.

**Mathias, Judge.**

[1] B.A. appeals the trial court's order that she be involuntarily committed to the Logansport State Hospital. B.A. raises two issues for our review, which we restate as follows:

> 1. Whether B.A. preserved her argument of insufficient service of process, which she raised for the first time during the closing arguments of the fact-finding hearing on the Hospital's petition.

> 2. Whether the Hospital presented sufficient evidence to support the trial court's order that she be committed to the Hospital.

[2] We affirm.

## Facts and Procedural History

[3] In December 2021, the State charged B.A. with Level 2 felony criminal confinement (where the "victim [wa]s used as a shield or hostage"); Level 5 felony criminal confinement; Class A misdemeanor domestic battery; Class A misdemeanor interference with the reporting of a crime; and Class A misdemeanor resisting law enforcement in the Hamilton Superior Court. Appellant's App. Vol. 2, p. 9. In February and again in March 2022, two different clinical psychologists concluded that B.A. was not competent to understand the criminal proceedings against her or to aid in her own defense.

In August, the Hamilton Superior Court committed B.A. to the Logansport State Hospital for competency restoration services.[1] In February 2023, the Hospital petitioned the court for B.A.'s involuntary regular commitment. According to an attached physician's statement of Dr. Danny Meadows, B.A. suffered from "[b]ipolar I disorder with mixed features and PTSD." *Id.* at 11. Dr. Meadows opined that B.A.'s conditions "substantially disturb[ed her] thinking, feeling, or behavior[] and impair[ed] her ability to function." *Id.* He further opined that that impairment resulted in her inability to function independently, noting that

> [B.A.] is unaware that she is psychotic, which affects both her judgement [sic] and insight. She is also unaware whenever she becomes verbally aggressive/threatening towards others, which occurs whenever she does not get her way (feels that she is being served a "child size serving," isn't served bread due to being on an 1,800 calorie diet, etc.), her delusional beliefs are challenged (during an evaluation[/]weekly or monthly assessment and/or her competency evaluation), or she feels betrayed, threatened, or wronged in some way (even if this is based on delusional beliefs). [B.A.'s] delusional beliefs are fixed, involve her being a CIA agent and [that] the Hamilton Co. police, her assigned attorney, and the judge involved in her criminal court case [are] working with multiple family members (her ex-husband, mother, and

---

[1] The need for mental health services provided through Indiana's state hospital system is great. It is our sincere hope that our partners in the Executive and Legislative branches consider providing even more support and resources to Indiana's State Psychiatric Hospitals and other State-sponsored mental health service providers.

sister) in a sex trafficking ring, which her two minor daughters are now involved in.

*Id.* And, in the petition for B.A.'s involuntary commitment, Dr. Meadows added:

> [B.A.] is currently homeless and unemployed. She reports knowing a number of famous individuals and frequently asks staff to contact them on her behalf for a variety of reasons. While she remains overtly psychotic, [B.A.] continues to believe that she does not have a mental illness and should only be prescribed seizure medication.

*Id.* at 9.

The trial court held a fact-finding hearing on the Hospital's petition in March. B.A. appeared at that hearing in person and by counsel, and, at the commencement of the hearing, her counsel informed the court that they were "ready to proceed" on the Hospital's petition. Tr. p. 4. Dr. Meadows then testified and adopted his statements in his written physician's statement.

Dr. Meadows also elaborated on how B.A.'s mental illness substantially impaired her judgment, reasoning, or behavior, resulting in her inability to function independently:

> Q [by B.A.'s counsel]: And your commitment [petition] is solely based on your belief that my client is gravely disabled?
>
> A    Yes, that's correct.

* * *

A    . . . [S]pecifically, . . . [i]t is that we believe that [her mental illness] is impinging greatly on her judgments and her insight, which would then lead to her having additional difficulties if she were to be released. Now in actuality if she were to be released . . . , we would let the Hamilton County Sheriff's Department . . . know that and she would be escorted back to the Hamilton County Jail.

* * *

Q    . . . Can you please elaborate . . . ?

A    All right, so based on the presentation of her mental health symptoms, we believe that she is not able to make rational and reasoned decisions. And that harm could come to her based on . . . how her mental health . . . symptoms[] are manifesting. So, the[] issue that we have is that we're not . . . saying that she doesn't have the ability to meet basic needs currently, but she is in a supervised setting. So, if she w[ere] not in this twenty-four-hour supervised setting . . . , if she were to go back into the community[,] based on her presentation and severity of her mental health symptoms we believe that she can come to harm potentially based on those symptoms.

*Id.* at 13-15. And Dr. Meadows testified that he has B.A. on a medication plan and that, under that plan, she has shown "some improvement" with "mood issues" but less improvement with her "delusional beliefs." *Id.* at 18.

[7]     Following Dr. Meadows's testimony, B.A. testified. She appeared to deny suffering from mental illness and stated only that she once suffered from epilepsy. She also discussed living in both Florida and Indiana, and when asked if she had an Indiana address, she responded that she was not sure because her mother-figure from her childhood "doesn't want me to live with her." *Id.* at 20. When asked what she would do for employment, B.A. stated:

> Well, I would probably go back to, just for safety and peace, I probably would go to the fashion mall and go to the Body Shop. I already have large connections in the retail area. I'd probably go back[;] right now I can't work in it now but it's my side job. That I probably will take if I stay in Indiana, I will take that on fully. Yeah, and teach on occasion on weekends. Teach professional ballet and professional modern dance.

*Id.* at 21.

[8]     Following B.A.'s testimony, the court invited the parties to make their closing statements or arguments. B.A.'s counsel then, for the first time, objected to the proceedings on the ground that the Hospital had not properly served B.A. with its petition for her commitment. *Id.* at 22-24. The court responded that it had "appointed [B.A.'s counsel] after the filing of the documents for the purpose[] of representing her with respect to the petition and these proceedings." *Id.* at 27. The court then overruled B.A.'s objection and ordered her involuntary civil commitment.

[9]     This appeal ensued.

## 1. B.A. did not preserve her argument of insufficient service of process.

On appeal, B.A. first asserts that the Hospital failed to provide her with sufficient service of process. A judgment rendered in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution is void. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). We review whether a judgment is void or valid de novo. *M.H. v. State*, 207 N.E.3d 412, 416 (Ind. 2023).

As we stated in *Munster v. Groce*, 829 N.E.2d 52, 58 (Ind. Ct. App. 2005):

> [i]n the seminal case regarding due process and notice, the Supreme Court held that the Due Process Clause requires at a minimum "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id.* at 314. "*An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.*" *Id.* "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315.

(Emphasis added.)[2]

[12] An untimely defense of insufficient service of process is waived. *See* Ind. Trial Rule 12(B); *see also* Ind. Code § 12-26-1-6 (2022) (stating that the Indiana Trial Rules apply to civil commitment proceedings unless another statute provides otherwise). Likewise, our Supreme Court has held that claims of insufficient notice and opportunity to prepare a defense are waived when there is not a timely objection in the trial court. *Salahuddin v. State*, 492 N.E.2d 292, 296 (Ind. 1986) ("By not objecting, [the defendant] waived the issue, even though . . . the error is of constitutional dimension."); *see also Daniel v. State*, 526 N.E.2d 1157, 1162 (Ind. 1988) ("As no objection was made at trial to the late filing . . . , this allegation of error has been waived."). An objection for an alleged inadequate opportunity to prepare a defense further requires a party to move for a continuance, and the failure to do so also results in waiver. *Daniel*, 526 N.E.2d at 1162. And our Supreme Court has further held that a party "should not be heard to argue [s]he was denied notice and opportunity to be heard" where her "counsel specifically acknowledged that they were prepared to proceed" on the matter at issue. *Salahuddin*, 492 N.E.2d at 296.

---

[2] Proper service of process also enables a trial court to obtain personal jurisdiction over the party served. *See Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 759 (Ind. 2014). B.A., who appeared at the March 2023 hearing and participated in those proceedings, does not suggest on appeal that the trial court lacked personal jurisdiction over her; we therefore interpret her service-of-process argument to go to her notice and opportunity to meaningfully participate in the fact-finding hearing on the Hospital's petition.

[13]     All of those reasons for waiver exist here. B.A. does not appeal from the denial of a motion for relief from judgment following a default. *See* T.R. 60(B)(6). Instead, she appeared in person and by counsel at the fact-finding hearing on the Hospital's petition. She did not object to the purported insufficient service of process at the commencement of the hearing but, rather, expressly informed the court that she was ready to proceed on the merits of the petition. After the Hospital presented its case, B.A. presented evidence contesting the petition. Only then, at the close of the fact-finding hearing, did B.A. object for the first time to the purported insufficient service of process. B.A.'s objection was not timely, and it is waived.

[14]     In addition to being subject to waiver, our Supreme Court has held that, even if a claim of insufficient service of process is properly preserved for appeal, there is no reversible error unless the party appealing the trial court's judgment demonstrates prejudice. Specifically, in *624 Broadway, LLC v. Gary Housing Authority*, 193 N.E.3d 381, 386 (Ind. 2022), our Supreme Court held that even demonstrably insufficient service of process is subject to a harmless-error analysis.

[15]     Here, however, B.A. does not argue, let alone demonstrate, how the outcome of the hearing on the Hospital's petition might have been different if she had had better documented service of process. For instance, she does not explain what she might have done differently at the hearing, and she has not shown that she was denied an opportunity to present her evidence or objections at the

hearing due to the purported insufficient service of process. Accordingly, there is no reversible error here.

[16] Nonetheless, in support of her argument on appeal, B.A. relies on our Court's opinion in *In re Commitment of M.E.*, 64 N.E.3d 855 (Ind. Ct. App. 2016). In *M.E.*, another panel of this Court recognized that service of process is, of course, required for petitions seeking an involuntary civil commitment. 64 N.E.3d at 860. But the *M.E.* panel went further, stating that documentary "proof" of "actual service" is "required" for all civil commitment cases. *Id.* The panel also stated that any waiver of service of process by a respondent in a civil commitment case "cannot be valid" because "[i]t is difficult, if not impossible, to see how an individual who is involuntarily detained . . . by a mental health institution can be considered able to exhibit the competency required" to waive his or her rights. *Id.* at 860-61.

[17] We decline to follow *M.E.* for three reasons. First, the Indiana Supreme Court has expressly disapproved of the *M.E.* panel's waiver analysis. As our Supreme Court subsequently stated, the *M.E.* panel's waiver analysis "conflates mental illness and mental competency, while Indiana law distinguishes between them." *A.A. v. Eskenazi Health/Midtown CMHC*, 97 N.E.3d 606, 612 (Ind. 2018). Second, and relatedly, the *M.E.* panel's conclusion that waiver of a defense of insufficient service of process can never be valid in civil commitment cases is not supported by our Trial Rules or precedent. *See, e.g.*, T.R. 12(B); *Salahuddin,* 492 N.E.2d at 296. Third, the *M.E.* panel did not conduct an analysis of

whether the insufficient service of process in that case was prejudicial, and, thus, the panel's analysis is at best incomplete from the standpoint of appellate review. *Cf. 624 Broadway*, 193 N.E.3d at 386 (holding that even demonstrably insufficient service of process must be prejudicial for it to be reversible error).

[18]     Accordingly, we decline to follow *M.E.*, and we conclude that B.A.'s objection to the purported insufficient service of process was not timely. We further conclude that she has not demonstrated reversible error even if the service of process here were insufficient. Therefore, the trial court's judgment against her is not void.

## 2. The Hospital presented sufficient evidence to support the trial court's judgment.

[19]     B.A. also challenges the sufficiency of the evidence underlying the trial court's judgment. For such issues, we will affirm if, "considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find the necessary elements proven by clear and convincing evidence." *In re Commitment of T.K.*, 27 N.E.3d 271, 273 (Ind. 2015) (cleaned up).

[20]     To support its petition for B.A.'s involuntary regular commitment, the Hospital was required to show by clear and convincing evidence that B.A. is mentally ill; that she is either dangerous or "gravely disabled"; and that her commitment is "appropriate." I.C. § 12-26-2-5(e) (2022). B.A. challenges only whether the

Hospital demonstrated that she is gravely disabled[3] and that her detention is appropriate.

First, B.A. argues that the Hospital failed to show that she is gravely disabled. According to Indiana Code section 12-7-2-96 (2022), "gravely disabled," as relevant here, "means a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual . . . has a substantial impairment . . . of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently."

The Hospital presented sufficient evidence to support the trial court's conclusion that B.A. is gravely disabled. The Hamilton Superior Court committed B.A. to the Hospital in connection with criminal charges that included Level 2 felony criminal confinement in which she is alleged to have used a victim as a shield or hostage. There, she was diagnosed by Dr. Meadows, who stated in the physician's statement attached to the Hospital's petition that B.A. suffered from "[b]ipolar I disorder with mixed features and PTSD." Appellant's App. Vol. 2, p. 11. Dr. Meadows further stated that B.A.'s conditions "substantially disturb[ed her] thinking, feeling, or behavior[] and impair[ed] her ability to function." *Id.*

---

[3] The Hospital did not premise its petition on the alternative basis that B.A. is dangerous.

[23]    Dr. Meadows explained how B.A.'s substantial impairment of her judgment, reasoning, or behavior would result in her inability to function independently. Specifically, in his written statement, Dr. Meadows noted that B.A. is "unaware that she is psychotic, which affects both her judgement [sic] and insight." *Id.* He further stated that she is "also unaware whenever she becomes verbally aggressive/threatening towards others," and that she becomes aggressive toward others "whenever she does not get her way . . . , her delusional beliefs are challenged . . . or she feels betrayed, threatened, or wronged in some way (even if this is based on delusional beliefs)." *Id.*

[24]    During his ensuing testimony at the March fact-finding hearing, Dr. Meadows adopted his written statements. He further testified that B.A.'s mental illness would "lead to her having additional difficulties if she were to be released," adding:

> she is not able to make rational and reasoned decisions. And that harm could come to her based on . . . how her mental health . . . symptoms[] are manifesting. So, the[] issue that we have is that we're not . . . saying that she doesn't have the ability to meet basic needs currently, but she is in a supervised setting. So, if she w[ere] not in this twenty-four-hour supervised setting . . . , if she were to go back into the community[,] based on her presentation and severity of her mental health symptoms we believe that she can come to harm potentially based on those symptoms.

Tr. pp. 13-15.

[25] B.A.'s argument against the Hospital's evidence of her being gravely disabled is that her "conduct does not rise to the level of a substantial impairment . . . ." Appellant's Br. at 22. According to B.A., "[s]he has been able to meet her needs in a supervised setting." *Id.* at 23. Further, B.A. asserts that Dr. Meadows's testimony was only that, if released from that setting, "harm *could* come" to her. *Id.* (emphasis in original).

[26] B.A.'s arguments mischaracterize Dr. Meadows's testimony. His testimony was not that B.A.'s risks are uncertain, and he did not testify that, if released, B.A. would be able to function independently. Rather, his testimony was that she is currently able to have her basic needs met *because* she is currently in a supervised setting. And the plain implication from his testimony was that, if released from a supervised setting, B.A. would be unable to function independently and would be in danger of coming to harm because of her impaired ability to make rational and reasoned decisions and because of her behavior of acting aggressively toward others over perceived slights, even where those perceptions stemmed from delusions. We thus conclude that Dr. Meadow's written statements and testimony provided the fact-finder with a sufficient basis from which to conclude that B.A. is gravely disabled.

[27] We similarly conclude that Dr. Meadows's testimony supports the trial court's conclusion that her commitment to the Hospital is appropriate. Again, a reasonable fact-finder could readily find from Dr. Meadows's testimony that B.A. would not do well in a less restrictive setting and that she needed

continued hospitalization. Dr. Meadows testified to B.A.'s aggressive behaviors while at the Hospital. And he testified that he has B.A. on a medication plan. Under that plan, B.A. has shown "some improvement" with "mood issues" but less improvement with her "delusional beliefs." Tr. p. 18. That evidence is sufficient to support the trial court's conclusion that her commitment is appropriate. *See, e.g.*, *In re Commitment of A.M.*, 959 N.E.2d 832, 836-37 (Ind. Ct. App. 2011).

[28] Still, B.A. argues that Dr. Meadows did not give a timeframe for her release, and, thus, his testimony is not sufficient to show that her commitment is appropriate. But we agree with the Hospital that B.A.'s argument here appears to "conflate[] her involuntary commitment case with her criminal case." Appellee's Br. at 20. B.A. does not cite any provision of the Indiana Code that requires a date certain for a person's release from an involuntary regular commitment in order to support a petition for that commitment.

[29] Accordingly, the Hospital presented sufficient evidence to support the trial court's judgment.

## Conclusion

[30] For all of these reasons, we affirm the trial court's order for B.A.'s involuntary regular commitment to the Hospital.

[31] Affirmed.

Vaidik, J., and Pyle, J., concur.