Michael G. TYSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S02–9204–CR–311.

Supreme Court of Indiana.

April 24, 1992.

Alan M. Dershowitz, Cambridge, Mass., Lee B. McTurnan, Judy L. Woods, McTurnan & Turner, Indianapolis, James H. Voyles, Ober Symmes Cardwell, Voyles & Zahn, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., William E. Daily, Chief Counsel, Gary Damon Secrest, Deputy Atty. Gen., Jeffrey Modisett, Marion County Prosecutor, David J. Dreyer, Chief Counsel, Indianapolis, for appellee.

SHEPARD, Chief Justice.

We accept this case for the limited purpose of outlining the standards and procedures applicable to requests for bond pending completion of a criminal appeal.

### I. Case History

A jury found appellant Michael Tyson guilty of rape and two counts of criminal deviate conduct on February 10, 1992. On March 26, 1992, he received an executed sentence of six years. He sought bail from the trial court pending appeal, pursuant to Ind.Code § 35–33–9–1 (West 1986). His request was denied. Tyson immediately filed a petition for bail pending appeal in the Indiana Court of Appeals, pursuant to Ind. Appellate Rule 6(B). On March 27, the Court of Appeals held oral argument on the petition. It denied the petition without opinion on March 31.

Tyson has filed a petition in this Court which is styled in the alternative as a request for a writ in aid of jurisdiction or for transfer. He asks this Court to provide the Indiana Court of Appeals and trial courts with guidance on the legal criteria governing petitions for bond pending appeal. He asks us to declare that the Court of Appeals is not the sole or final appellate tribunal with jurisdiction to establish and apply the relevant legal principles on bond

pending appeal. Appellant is correct that there is need for a definitive statement from this Court on these issues. We accept jurisdiction of the case for this purpose and then return it to the Court of Appeals.

## II. History of Bail

■ Neither the United States Constitution nor the Indiana Constitution confers a constitutional right to bond pending appeal. *Finetti v. Harris,* 609 F.2d 594 (2d Cir. 1979); *Vacendak v. State* (1982), Ind., 431 N.E.2d 100; *Keys v. State* (1979), 271 Ind. 52, 390 N.E.2d 148. For most of this century, however, Indiana has afforded the opportunity for bond by statute.[1] A 1911 law mandated that "[w]henever any person is convicted ... and such person has appealed ... such person shall be admitted to bail pending such appeal upon compliance with the provisions of this act...."[2] In 1929, the statute was amended to require that defendants show a probability of reversal before being admitted to bail pending appeal.[3] This prerequisite was repealed in 1935.[4] In 1979, the General Assembly repealed the 1935 act, and enacted new provisions expressly stating that bail pending appeal might be granted "at the discretion of the court in which the case was tried."[5]

The current statute, Ind.Code § 35–33–9–1, precludes granting appeal bonds to those convicted of class A felonies or the nonsuspendible offenses listed in Ind.Code § 35–50–2–2 (West Supp.1991). We have upheld such classifications against constitutional challenges based on equal protection. *See Grassmyer v. State* (1981), Ind., 429 N.E.2d 248.

## III. Appellate Courts May Reconsider Bail

■ Although Ind.Code § 35–33–9–1 assigns the question of bail pending appeal to the discretion of the trial court, our appellate rules contemplate a role for the appellate courts as well. "If the stay is denied by the trial court or judge thereof, *the appellate tribunal* may reconsider the application at any time after denial upon a proper showing by certified copies of the trial court's action and grant or deny the same and fix the bond." Ind.Appellate Rule 6(B) (emphasis added).[6] "The appellate tribunal" means the appellate court hearing the direct appeal. This Court would hear such applications in those civil and criminal cases for which we hear direct appeals under Ind.Appellate Rule 4. In the majority of criminal cases, the Court of Appeals would consider such requests.[7]

1. In *Ex parte Pettiford* (1929), 97 Ind.App. 703, 703–04, 167 N.E. 154, 154, the Appellate Court of Indiana traced the history of bail pending appeal, noting that it is a matter of legislative grace, not constitutional right. Said the court:

Prior to the enactment of [the 1911 act], there was no provision in our statute directing that persons who had been tried and convicted of violating our criminal law might be let to bail pending appeal. The matter of such persons being admitted to bail stood as at common law, and at common law letting to bail, after conviction, was a matter of grace, extended by the King through his Judges of the King's Bench, to the convicted party, in their sound discretion. It is fundamental that when a thing is a matter of *grace,* the party extending the grace has a right to prescribe the terms and conditions upon which such grace will be extended. The Legislature of this state is the "mouthpiece" of our King—the people—and by said chapter 121 the terms and conditions have been declared and fixed upon which such grace can be by us extended.

There is no constitutional right of the petitioner involved herein. The provision of our

Constitution (section 17, art. 1) that "offenses other than murder and treason, shall be bailable by sufficient sureties," means that *before trial,* and while the presumption that the accused is innocent obtains, the accused, except when charged with treason or murder, may be let to bail.

2. 1911 Ind.Acts ch. 154. The statute excepted those sentenced to death or life imprisonment.

3. 1929 Ind.Acts ch. 121.

4. 1935 Ind.Acts ch. 283, § 8.

5. 1979 Ind.Acts P.L. 292, § 3, amendment originally codified at Ind.Code § 35–4–6–1.5 (Burns Sup.1979), now found at Ind.Code § 35–33–9–1. (West 1986).

6. *Cf. Naked City, Inc. v. State* (1982), Ind.App., 434 N.E.2d 576.

7. Since we amended Ind.Appellate Rule 4(A)(7) effective January 1, 1989, hardly any criminal

As our Court of Appeals has observed, it would be unconstitutional to repose in the trial court the exclusive power to determine whether a petitioner should be let to bail pending appeal. *Willis v. State* (1986), Ind. App., 492 N.E.2d 45.

### IV. Standards for Considering Bail on Appeal

We now turn to the standard which appellate courts should apply when considering a request for bail which the trial court has denied. Appellate Rule 6(B) says that the court on appeal "may reconsider the application." Appellant argues that this suggests a "de novo" standard of review, that is, an entirely new determination of the bail question without regard for the judgment of the trial court.

■ Although Appellate Rule 6 authorizes the appellate court to fix bond, it does not provide for hearing such requests de novo. The requirement of a certified record of the trial court's action signals that notice is to be paid to the trial court's decision. In addition, reconsideration of bail pending appeal is unlike other situations where de novo review is authorized, such as appeals from judgments of city courts. Ind.Code § 33–10.1–5–9(a) (West 1983) ("An appeal from a judgment of a city court may be taken to the circuit or superior court of the county and tried de novo."); *see also State ex rel. Rodriguez v.* *Grant Circuit Court* (1974), 261 Ind. 642, 309 N.E.2d 145 (criminal defendant convicted in city court had right to appeal and trial de novo in circuit court).[8]

■ Although appellate courts do not consider requests for bond de novo, neither are they limited to reviewing trial court decisions for abuse of discretion. *Willis,* 492 N.E.2d at 48. Because the appellate court is authorized to grant and fix bond, it must be able to examine those factors which are pertinent to the decision whether to grant bond pending appeal. The appellate court must give the trial court appropriate deference, however, on those issues which the trial court is in the best position to judge.

■ The consideration of a petition for bond pending appeal starts with the presumption that the convicted defendant is guilty, the opposite of the starting point when considering bail pending trial. *See Ex parte Pettiford* (1929), 97 Ind.App. 703, 167 N.E. 154. The petitioner bears the burden of demonstrating that there are compelling reasons to allow a guilty defendant to remain free pending appeal of his conviction. In hearing such petitions, the appellate court should examine three factors: (1) the probability of reversible error at trial, (2) the risk of flight, and (3) the potential dangerousness of the defendant.[9]

cases come to this Court *on direct appeal* in which the defendant would even be eligible for an appeal bond. This Court exercises exclusive jurisdiction in criminal cases in which a sentence of death, life imprisonment or a minimum term of greater than fifty (50) years for a single offense is imposed. By definition, this encompasses all the non-bailable offenses listed in Ind.Code § 35–33–9–1. All other criminal appeals must first be taken to the Court of Appeals. App.R. 4(A)(7), 4(B). Appellate Rule 6(B) was adopted in its present form in 1971, seventeen years before Proposition Two led to the landmark amendments of Appellate Rule 4(A)(7). Thus, for many years cases came to us on direct appeal where the defendant was actually eligible for bail. Both today and at the time of its adoption, Appellate Rule 6(B) contemplated applications in this Court, as well as in our Court of Appeals.

8. Appeals from city courts are reviewed de novo because they are not courts of record, unlike the trial court which heard this case. Ind.Code § 33–10.1–5–7 (West Supp.1991); *Matter of Public Law No. 305 and Public Law No. 309 of Indiana Acts of 1975* (1975), 263 Ind. 506, 334 N.E.2d 659 (certain small claims courts are not courts of record and their decisions are reviewable de novo in the circuit or superior court).

9. These factors are similar to those considered by the federal courts. The Bail Reform Act, 18 U.S.C. § 3143(b) (1992), states in pertinent part:

**Release or detention pending appeal by the defendant....** [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

■ *Probability of Error.* The appellate court need not defer to a trial court's findings concerning the likelihood of reversible error. Appellate courts are by their nature in a better position to judge the possibility of reversible error at trial. We note, however, that the sort of ancillary review attendant to a bail request necessarily provides a more limited view of the issues than the ordinary appellate review with full briefing and a complete record. Therefore, an applicant must show that there is a likelihood that his conviction will be reversed on appeal. This is a higher burden than merely showing that there are "substantial issues" or "numerous meritorious bases" for appeal. He must convince the reviewing court that his case will probably be among the ten or fifteen percent which are reversed on appeal.

■ *Risk of Flight and Dangerousness.* The second and third factors are ones on which deference to the trial court is appropriate. The trial court is in the best position to judge the credibility of the witnesses and it has the best view of the defendant. Risk of flight is central to pretrial bail determinations because of the need to assure the presence of the accused at trial. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290, 1294. After conviction and sentencing this factor would generally weigh more heavily against granting bail. First, once a defendant knows his fate the risk of flight is usually greater. Second, the public interest in assuring that a convict will serve his term of imprisonment if the conviction is affirmed becomes an additional consideration.

■ When assessing risk of flight and dangerousness, the court should also take cognizance of the seriousness of the crime for which defendant has been convicted. For more serious crimes, the sentence will tend to be greater and the risk of flight stronger. Similarly, more serious offenses suggest greater danger in leaving the defendant at large. *See State v. Kerrigan,* 98 Idaho 701, 571 P.2d 762 (1977). We note also that the state need not show that the defendant is dangerous; rather it is the defendant's burden to show that he is not dangerous. *See United States v. Vance,* 851 F.2d 166 (6th Cir.1988), *cert. denied,* 488 U.S. 893, 109 S.Ct. 231, 102 L.Ed.2d 220. The reviewing court may make its own assessment of these factors, but it should be cautious about second-guessing the findings of the trial court on these issues.

## V. Appellate Procedure

Appellant Tyson's petition attempts to invoke our jurisdiction under alternative means: through a writ in aid of appellate jurisdiction or through transfer.

■ This case does not present matter addressed by a writ in aid of appellate jurisdiction. Such writs are authorized under article VII, section 4 of the Indiana Constitution and referred to in Ind.Appellate Rule 4(A)(6), which states: "The Supreme Court shall have exclusive jurisdiction of ... issuance of writs necessary or appropriate in aid of its jurisdiction." These writs contemplate ordering that which is necessary for the court to exercise its appellate authority. For example, an appellate court might issue a writ directing a trial court to supply a portion of the record which the appellate court needs in order to review the issues on appeal. Occasionally, such a writ is issued to enforce a decision or to prevent interference with the subject matter of appellate litigation pending our final determination. *See Ensweiler v. City of Gary* (1975), Ind.App., 325 N.E.2d 507; *Baltimore & Ohio R.R. Co. v. Wabash R.R. Co.* (1901), 28 Ind.App. 185, 62 N.E. 520. Whether or not Michael Tyson receives bail pending his appeal does

---

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
(i) reversal,
(ii) an order for a new trial,
(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

not involve this Court's appellate jurisdiction over the merits of Tyson's appeal in chief.

◼ The Attorney General contends that Tyson may not seek relief at this stage of the case on a petition to transfer. Appellate Rule 11 provides that a party seeking transfer must petition the Supreme Court directly within twenty days of the date of the rendition of the decision in the Court of Appeals. The Court of Appeals' action of denying Tyson bail is a "decision," but it is not the sort of final decision on the merits of an appeal covered by Rule 11. Appellate Rule 11 goes on to say that the petition to transfer must set forth, among other things, "that the Court of Appeals decided the case with written opinion or memorandum decision giving the date when the opinion or memorandum decision was filed." The Court of Appeals did not, and was not required to file a written opinion or memorandum decision on its decision regarding Tyson's appeal bond.[10]

◼ Transfer as described in Rule 11 is simply an administrative term this Court has attached to the process of retaining control over this Court's declaration of law function.[11] We have previously recognized that a petition to transfer may be granted despite the fact that it does not specifically fit within Rule 11.

This Court can still consider a Petition to Transfer which does not fall within the categories established in A.P. 11(B)(2). However, consideration of such a petition should be a rare occurrence, and should be done only where a special need has been demonstrated. The grounds for transfer are relatively inclusive and permit consideration of most any important question which might arise. Parties seeking transfer should make a concerted effort to frame their arguments in terms of these established categories. If a party finds it impossible to urge its point within these categories, he should so state, explaining why it is impossible to do so and why the Supreme Court should still consider his Petition to Transfer.

*Baker v. Fisher* (1973), 260 Ind. 513, 515, 296 N.E.2d 882, 883 (citation omitted). Thus, we may allow transfer on "decisions" that are not issued by written opinion or memorandum pursuant to this court's inherent authority if there is a special need for this Court to act.

This Court has broad constitutional authority to exercise appellate review and oversight.[12] Ind. Const. art. VII, §§ 4, 6.

---

**10.** Indiana Code § 33–2.1–3–2 (West Supp.1991) provides in part: "The judicial opinion or decision in each case determined by the supreme court or the court of appeals shall be reduced to writing." This section was enacted after a constitutional amendment in 1970 deleted the following provision: "The supreme court shall, upon the decision of every case, give a statement in writing of each question arising in the record of such case, and the decision of the court thereon." IND. CONST., art. VII, § 5 (1851). The Supreme Court and the Court of Appeals are thus required to issue written decisions, as opposed to oral ones, but are not constitutionally *required* to give a written statement of reasons for every action taken by the court. The Court of Appeals issued its denial of Tyson's petition for bail pending appeal in writing, satisfying Ind.Code § 33–2.1–3–2.

**11.** *See* George Patton, *Recent Developments in Indiana Appellate Procedure: Reforming the Procedural Path to the Indiana Supreme Court,* 25 Ind.L.Rev. 1105 (forthcoming June 1992), for an excellent discussion on the history of the term "transfer." The term came into use in 1891 when the legislature created an Appellate Court which had final jurisdiction over minor matters. When appeals were not taken to the proper court, either the Appellate Court or the Supreme Court could transfer the case to the proper court. " 'Transfer' was at first not a procedure for the supreme court to review the decisions of the appellate court, but rather to place the appeal in the proper court." *Id.* at 1115. In 1901, transfer came to be used in the way in which it is used today.

**12.** *See Pittsburgh Ry. Co. v. Peck* (1909), 172 Ind. 562, 577, 88 N.E. 939, 944 (Supreme Court "is fully invested under the organic law with the right and power to determine, not only its own jurisdiction, but also has the power and authority ultimately and conclusively to determine, under the law, the jurisdiction of all other judicial tribunals within the State."); *Troue v. Marker* (1969), 253 Ind. 284, 288, 252 N.E.2d 800, 803:

We hold therefore that where the statute or rules of this Court fail to provide for a review of the decision of the Appellate Court, which decision could be reviewed under the old common law writ of certiorari, the Supreme

It would be within the Court's power, for example, to promulgate a rule that authorizes parties to petition for transfer from *any* ruling made by the Court of Appeals, whether it be a motion for extension of time to file a reply brief or a motion to increase the page limitation for a brief.[13] This would be extremely burdensome, of course, without resultant benefit to litigants. We have chosen to adopt Rules of Appellate Procedure limiting the actions that are generally brought before us for review or action.

Notwithstanding this self-imposed limitation, we may still choose to speak on an issue for which the appellate rules do not specifically provide. *See, e.g., Grassmyer,* 429 N.E.2d at 251 ("We nevertheless exercise our inherent judicial authority and retain this case for disposition on the merits" despite the fact defendant did not receive greater than ten years' imprisonment as required by Appellate Rule 4(A)(7)). We have chosen to assume jurisdiction in this case and write on the issue of the procedure for reviewing bail decisions on the basis of the need to give guidance on this issue. That does not mean, however, that we will review the merits of the Court of Appeals' bail decision. Moreover, because we elect to accept jurisdiction outside the regular process of Appellate Rule 11, our doing so does not vacate their ruling under Appellate Rule 11(B)(3).

 The existence of Appellate Rule 6 offers most defendants two avenues to make a case for bond pending appeal—in the trial court and in the court to which the direct appeal will be taken. We believe that such is adequate to afford due process in all but the most unusual situations, in which cases we will assume jurisdiction of the merits of the request for bail.

### VI. Conclusion

The record and argument provided by counsel do not persuade us that the denial of bond in this case is a matter so clearly in error that we should exercise our inherent authority to overrule it. Accordingly, we return this case to the Court of Appeals.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.

Court of this state may consider a petition to transfer as a writ of certiorari at common law. In such a case this Court need not be limited to the items or grounds specified in the rule or in the statute. The action of this Court is based upon *its inherent constitutional duty to act as the final and ultimate authority in stating what the law in this state is.* (Emphasis added).

**13.** "The Supreme Court shall exercise appellate jurisdiction under such terms and conditions as specified by rules...." Art. VII, § 4. The Court of Appeals "shall exercise appellate jurisdiction under such terms and conditions as the Supreme Court shall specify by rules...." Art. VII, § 6. *See* Ind.Appellate Rule 18 for an example of another appellate review process this Court has instituted by rule. (To appeal from a tax court decision, the party first "petitions for review." If review is accepted, the parties then submit appellate briefs to this Court).