

**ATTORNEY FOR APPELLANT**

Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bruce Ryan,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 26, 2015

Court of Appeals Case No.
49A02-1501-CR-2

Appeal from the Marion Superior
Court

The Honorable Marc T. Rothenberg,
Judge, and The Honorable Amy J.
Barbar, Magistrate

Cause No. 49G02-1110-FC-77449

**Najam, Judge.**

## Statement of the Case

[1] Following this court's reversal of Bruce Ryan's convictions on direct appeal but before this court's opinion was certified as final, Ryan petitioned the trial court for an appeal bond. The court granted Ryan's petition but placed him under

numerous restrictions, which were supervised by the local community corrections program. The Indiana Supreme Court then reversed this court's decision and reinstated Ryan's convictions. *See Ryan v. State*, 9 N.E.3d 663, 673 (Ind. 2014) ("*Ryan I*"). Ryan spent a total of 429 days under the conditions of his appeal bond, and he never violated any of those conditions. As such, following the reinstatement of his convictions, Ryan moved the trial court for an award of credit time[1] for the time he had served under the conditions of the bond.

[2] Ryan now appeals the trial court's denial of that request, and he and the State present numerous arguments for our review. We hold, as a matter of first impression, that credit time for a defendant's release on an appeal bond is prohibited under Indiana law. We also hold that, insofar as his arguments require this court to review the conditions of his release on his appeal bond, Ryan's arguments are moot. Indiana Appellate Rule 18 provided Ryan with a

---

[1] Although not effective until July 1, 2015, which was after the trial court's judgment in the instant appeal, new Indiana Code Section 35-50-6-0.5 provides the following useful definitions:

(1) "Accrued time" means the amount of time that a person is imprisoned or confined.
(2) "Credit time" means the sum of a person's accrued time, good time credit, and educational credit.
(3) "Educational credit" means a reduction in a person's term of imprisonment or confinement awarded for participation in an educational, vocational, rehabilitative, or other program.
(4) "Good time credit" means a reduction in a person's term of imprisonment or confinement awarded for the person's good behavior while imprisoned or confined.

As a matter of law, Indiana Code Section 35-50-6-0.5 "is intended to be a clarification" of prior terms of art with respect to credit time and it "does not affect any time accrued before July 1, 2015 . . . ." Ind. Code § 35-50-6-0.6 (West 2015). To avoid confusion, throughout this opinion we use the terms defined in Indiana Code Section 35-50-6-0.5.

clear and immediate opportunity to have the court on appeal review the conditions of his release when they were imposed, but Ryan did not exercise that option. He may not now ask this court to review the conditions of his release under the guise of a request for credit time. Thus, we affirm the trial court's judgment.

## Facts and Procedural History

[3] Following a two-day trial, on August 14, 2012, a jury found Ryan guilty of two counts of sexual misconduct with a minor, both as Class C felonies. On October 24, 2012, the trial court sentenced him to an aggregate term of five years in the Indiana Department of Correction ("DOC"), with two years executed and three years suspended to probation. Ryan filed a direct appeal and, in an opinion issued on July 31, 2013, this court reversed his convictions, holding that several statements made by the prosecutor during closing argument constituted misconduct. Consequently, we remanded for a new trial.

[4] Five days later, Ryan petitioned the trial court to set an appeal bond "to stay execution of his remaining sentence, stay probation[,] and stay the requirement that [he] register as a sex offender." Appellant's App. at 26. Ryan explained that he sought an appeal bond because "the length of time until [the] opinion [of the court of appeals] is certified may be quite long," and he would "suffer a[n] irreparable harm by being required to continue to serve time in the [DOC], by being required to register for sex offender probation[,] and by being required to register on the sex offender registry." *Id.* at 28, 30.

[5]     The trial court held a hearing on Ryan's petition on September 12, 2013, which was about five weeks before Ryan was due to be released from his executed term in the DOC. Near the conclusion of the hearing, the court found that Ryan presented "a low risk of flight" and "a low risk of dangerousness to the community." Tr. at 17. As such, the court granted Ryan's petition and "set a new bond of $5,000.00 surety." *Id.* The court stated that it would "stay probation" upon Ryan's release. *Id.*

[6]     Immediately following the court's statements, the State asked whether the court would consider GPS monitoring as a condition of Ryan's release. The court agreed and ordered Ryan to be placed on GPS monitoring through Marion County Community Corrections ("MCCC"). Ryan objected in light of the court's finding that he was not a flight risk. The court overruled Ryan's objection, stating that "the alleged victim is a child and this will probably come as quite a shock to them [sic] if it hasn't already." *Id.* at 18. The court then ordered Ryan "to comply with all rules, regulations, procedures and/or treatment recommendations, [and] pay all fees" pursuant to his placement with the MCCC. Appellant's App. at 10.

[7]     Thereafter, Ryan posted his bond and, on September 18, reported to the MCCC to obtain his GPS monitoring device. At that time, the MCCC required Ryan to sign an "Electronic Monitoring Contract" that imposed the following relevant "Conditions of Electric [sic] Monitoring":

        1) Ryan was "required to live in Marion County";

2) Ryan was permitted to travel only to the seven counties surrounding Marion and then only for "work-related reasons";

3) Ryan was not allowed to leave Marion County without the consent of his Community Supervision Manager ("CSM");

4) Ryan was not allowed to have overnight stays outside of Marion County or travel outside of Indiana without prior approval by the trial court;

5) Neither Ryan nor anyone he lived with was allowed to possess alcohol;

6) Ryan was required to change residences if a roommate possessed alcohol in the residence;

7) Ryan was not allowed to use, purchase, or possess weapons, firearms, or ammunition;

8) Ryan was required to remove from his home any weapons he already owned;

9) Ryan's roommates, if any, would not be allowed to have weapons in the residence;

10) Ryan was required to allow the MCCC to confiscate any weapons, firearms, or ammunition at his home, even if lawfully possessed by another resident;

11) Ryan was required to allow MCCC staff or law enforcement officers to enter his residence at any time, without prior notice, and without the need for a search warrant;

12) Ryan was required to allow MCCC staff or law enforcement officers to search his person or property at any time upon reasonable suspicion that any of these conditions had been violated;

13) Ryan was not allowed to contact anyone who was on probation or parole without prior approval from his CSM;

14) Ryan was not allowed to contact any known felon without prior approval from his CSM;

15) Ryan was not allowed to have "more than two (2) non-relatives . . . visit[ing his] home at any given time";

16) Ryan was required to allow the MCCC to "monitor all of [his] activities . . . includ[ing], but not limited to, monitoring [his] residence, [his] employment, and [his] counseling or treatment sessions";

17) Ryan was required to be available for contact at all times;

18) Ryan was required to respond to an MCCC contact "within a reasonable time (i.e. 15 minutes)"; and

19) Ryan was required to participate in any additional "programming and/or services in-house at [the MCCC] or services available in the community" if so ordered by the MCCC.

*Id.* at 43-45.[2] The MCCC also required Ryan to sign a separate "GPS Program" document, which imposed additional, GPS-specific conditions, such as how to wear the device, charge the device, and understand the device's

---

[2] This list of the conditions imposed on Ryan is not exhaustive. Among other conditions not listed is a description of the fees imposed on Ryan, in which the document states that Ryan's failure to make regular payments of fees may result in "a violation of Home Detention" being filed with the trial court. Appellant's App. at 44.

signals. *Id.* at 46-47. Ryan acknowledged that the violation of any of the conditions of his release could result in his reimprisonment.

[8] Two weeks after being released, on October 2 Ryan moved the trial court to terminate one of the conditions of his release, namely, the condition that he submit to random drug and alcohol testing. Ryan argued that this condition was unrelated to assuring either his presence at trial or the safety of another. The trial court agreed and, two days later, it ordered the MCCC to remove this condition of Ryan's release. Ryan did not make a similar request for any of the other conditions of his release.

[9] Meanwhile, the Indiana Supreme Court granted the State's petition for transfer of jurisdiction over this court's opinion in Ryan's direct appeal. Thereafter, the court concluded that the prosecutor's statements were not misconduct, and the court reinstated Ryan's convictions. *Ryan I*, 9 N.E.3d at 673. Ryan sought rehearing, which the court denied on August 26, 2014.

[10] About six weeks later, on October 7, 2014, the Marion County Probation Department ("MCPD") began supervising Ryan along with the MCCC. *See* Appellant's App. at 120; Tr. at 26-27. Despite the MCPD's involvement, the conditions of Ryan's release did not change at this time. On October 20, the MCPD informed Ryan that he was "not to receive [c]redit" time for the time he had been supervised by the MCCC. Appellant's App. at 12.

[11] Ryan moved the trial court to terminate his placement with the MCCC and award him credit time for the time he had spent with the MCCC under the

conditions of his appeal bond.[3] The court held a hearing on Ryan's motion on November 21. At that hearing, the State acknowledged that "[Ryan is] being monitored by two different entities . . . and it seems rather duplicative at this point." Tr. at 27.

[12] At the conclusion of the November 21 hearing, the court ordered Ryan to be removed from his placement with the MCCC and to begin serving his originally ordered probation with the MCPD.[4] At this time, Ryan registered as a sex offender and began "sex offender treatment." *Id.* at 39. The court held a separate hearing in December on Ryan's request for credit time. At that hearing, the State argued that Ryan's release on his appeal bond was analogous to a defendant's release on pretrial bail.[5] The trial court agreed, stating:

> As to GPS, I think the—frankly there's no case law and because there's no statute providing for pretrial—for credit time for GPS monitoring because [those monitored are] not considered in custody. And so the Court will deny the motion for credit time

---

[3] Ryan's motion appears to have been based on *Pharr v. State*, 2 N.E.3d 10, 12 (Ind. Ct. App. 2013), in which we held that, upon terminating a defendant's participation in a community corrections program imposed as part of his sentence, the trial court must determine the credit time to which the defendant is entitled for the period of time he served in that program. But *Pharr* is inapposite in that it involved a post-incarceration defendant's request for credit time rather than a defendant released pursuant to an appeal bond.

[4] Ryan's accrued time with the MCCC was 429 days. This includes the last forty-five days in which he was supervised by both the MCPD and the MCCC and which the trial court did not apply to Ryan's probationary term when it formally ordered him to begin his probation on November 21, 2014. It also is not clear what happened to the approximately five weeks of executed time Ryan did not serve pursuant to his release on his appeal bond.

[5] Of course, since this court's opinion in Ryan's direct appeal was not certified during his release on his appeal bond, he was never in fact on pretrial release.

for the GPS.

*Id.* at 40.  The court then entered judgment on Ryan's motion, and this appeal ensued.

## Discussion and Decision

Ryan appeals the trial court's denial of his motion for credit time for the time he served with the MCCC under the conditions of his release on his appeal bond. Trial courts are authorized to issue appeal bonds under Indiana Code Chapter 35-33-9.  At the time of Ryan's petition for an appeal bond, Indiana Code Section 35-33-9-1 provided[6] that "[a] person convicted of an offense who has appealed . . . may file a petition to be admitted to bail pending appeal."  Upon granting such a petition, Section 35-33-9-4(a) requires the trial court to "fix bail in a reasonable amount, considering the nature of the offense and the penalty adjudged, as will insure compliance by the defendant with the terms of the bond" and to "make an order containing the terms of bail."  And Section 35-33-9-3(a) requires the defendant to promise to:

> (1) faithfully prosecute his appeal;
> (2) abide by the order and judgment of the court to which the cause is appealed;
> (3) surrender himself in execution of the judgment if the appeal be affirmed or dismissed; and
> (4) surrender himself to the trial court if required by the judgment upon reversal.

---

[6] The subsequent amendments to this section are not material to this appeal.

Finally, Section 35-33-9-5(c) states:

> If a defendant is admitted to bail under this chapter after he has
> commenced to serve his sentence, and . . . the judgment from
> which the appeal was taken is affirmed, the defendant shall have
> credit on his term of sentence for the time he served before being
> admitted to bail. *During the time any defendant is released from
> custody under this chapter, the judgment of conviction shall be stayed*.

(Emphasis added.)

[14] As our supreme court has recognized: "Neither the United States Constitution nor the Indiana Constitution confers a constitutional right to bond pending appeal." *Tyson v. State*, 593 N.E.2d 175, 177 (Ind. 1992). Rather, "the right to bail pending appeal is . . . a matter of legislative grace." *Willis v. State*, 492 N.E.2d 45, 46 (Ind. Ct. App. 1986). As such, "the authority of the courts to grant such bail is limited to the authority granted by statute." *Id.* And Indiana Code Section 35-33-9-1 plainly grants to the trial court the discretion necessary to consider a defendant's petition for bail on appeal. *Id.* at 47.

[15] But bail on appeal is also provided for under Indiana Appellate Rule 18. In relevant part, that Rule states:

> No appeal bond shall be necessary to prosecute an appeal . . . .
> Enforcement of a Final Judgment . . . shall be stayed during
> appeal upon the giving of a bond . . . . The trial court . . . shall
> have jurisdiction to fix and approve the bond . . . and order a stay
> prior to or pending an appeal. After the trial court . . . decides
> the issue of a stay, the Court on Appeal may reconsider the issue

at any time upon a showing, by certified copies, of the trial court's action. The Court on Appeal may grant or deny the stay and set or modify the bond . . . . This rule creates no right to a stay where precluded by law.

Ind. Appellate Rule 18. As our supreme court has explained:

> Although Ind. Code § 35-33-9-1 assigns the question of bail pending appeal to the discretion of the trial court, our appellate rules contemplate a role for the appellate courts as well. . . . As our Court of Appeals has observed, it would be unconstitutional to repose in the trial court the exclusive power to determine whether a petitioner should be let to bail pending appeal. *Willis*[,] 492 N.E.2d 45.
>
> * * *
>
> Although appellate courts do not consider requests for [an appeal] bond de novo, neither are they limited to reviewing trial court decisions for abuse of discretion. *Willis*, 492 N.E.2d at 48. Because the appellate court is authorized to grant and fix bond, it must be able to examine those factors which are pertinent to the decision whether to grant bond pending appeal. The appellate court must give the trial court appropriate deference, however, on those issues which the trial court is in the best position to judge.

*Tyson*, 593 N.E.2d at 177-78 (emphasis and footnote omitted).

[16] The essence of Ryan's argument on appeal is that the conditions of his appeal bond were so above-and-beyond those authorized by Indiana Code Chapter 35-33-9 that he is entitled to credit time for the time he spent under those

conditions.[7] But we cannot agree with Ryan's premise that he is entitled to credit time if the conditions of his release are onerous enough. Where the award or denial of credit time is plainly directed by statute, trial courts generally do not have discretion in awarding or denying such credit. *Molden v. State*, 750 N.E.2d 448, 449 (Ind. Ct. App. 2001). "However, those sentencing decisions not mandated by statute are within the discretion of the trial court and will be reversed only upon a showing of abuse of that discretion." *Id.*

[17] We read Indiana Code Section 35-33-9-5(c) and Appellate Rule 18 to prohibit an award of credit time for the time a defendant is released from custody on an appeal bond. Again, Section 35-33-9-5(c) directs "the judgment of conviction shall be stayed" while a defendant is "released from custody under this chapter." And Appellate Rule 18 likewise provides for a stay from the judgment being appealed. It follows from these mandates to stay the judgment of conviction that the issuing court shall likewise stay—and the defendant shall

---

[7] The State characterizes Ryan's argument on appeal as invited error. We cannot agree with this characterization. Ryan received a stay of the judgment of his conviction when he invited the court to treat him like a bailee. But nothing in that request invited the court to impose, as Ryan alleges happened, conditions above and beyond those authorized under Indiana Code Chapter 35-33-9. And our supreme court has limited the "factors . . . pertinent" to issuing an appeal bond as follows:

> The consideration of a petition for bond pending appeal starts with the presumption that the convicted defendant is guilty, the opposite of the starting point when considering bail pending trial. The petitioner bears the burden of demonstrating that there are compelling reasons to allow a guilty defendant to remain free pending appeal of his conviction. In hearing such petitions, the [reviewing] court should examine three factors: (1) the probability of reversible error at trial, (2) the risk of flight, and (3) the potential dangerousness of the defendant.

*Tyson*, 593 N.E.2d at 178 (citation omitted); *see also Anderson v. State*, 181 Ind. App. 628, 631, 393 N.E.2d 238, 240-41 (1979) (reviewing the amount set by the trial court for bail on appeal).

not earn credit time toward—the defendant's sentence during his release on an appeal bond. Thus, the trial court here had no discretion in denying Ryan's motion for credit time—the court was required to simply apply the mandate of Indiana Code Section 35-33-9-5(c). *See Molden*, 750 N.E.2d at 449.

[18] This is not to say that Ryan was without a remedy to be relieved of the potentially unreasonable conditions of his appeal bond. But his remedy was to request immediate review of the trial court's imposition of those conditions. Indeed, within two weeks of his release, Ryan did request the trial court to reconsider the condition that he submit to random drug and alcohol screens, and the trial court agreed to remove that condition. Ryan could have also requested appellate review: the trial court's judgment on the appeal bond was, by way of Appellate Rule 18, immediately reviewable by the court on appeal.

[19] In this respect, Ryan is not unlike a pretrial bailee. Indiana's appellate courts have long recognized that a judgment on pretrial bail is immediately appealable. *See, e.g.*, *Bozovichar v. State*, 230 Ind. 358, 363, 103 N.E.2d 680, 682 (1952), *overruled on other grounds*, *Fry v. State*, 990 N.E.2d 429 (Ind. 2013). And waiting until after the defendant is convicted and sentenced to appeal the judgment on pretrial bail renders any questions regarding the propriety of that judgment moot and, therefore, typically not subject to review. *See, e.g.*, *Partlow v. State*, 453 N.E.2d 259, 274 (Ind. 1983).

[20] Similarly, Ryan cannot sit idly by until the conditions of his release expire and then have this court review those conditions through a request for credit time.

If Ryan believed the conditions of his release were unreasonable, he could—as he did—ask the trial court to reconsider some or all of those conditions. Or he could have requested this court to review those conditions. App. R. 18. But, upon the revocation of his appeal bond following the certification of our supreme court's opinion in *Ryan I*, any complaints Ryan had about the trial court's judgment on his appeal bond were rendered moot. *See Alleyn v. State*, 427 N.E.2d 1095, 1100 (Ind. 1981). Thus, it is not proper for Ryan to have endured the conditions of his release and waited until his direct appeal was at an end only then to request credit time based on the conditions of his release. *Cf. id.* (holding that the relief requested on appeal—a new trial for of an allegedly erroneous appeal-bond judgment—was "not proper for the type of error alleged").

[21] And we have rejected arguments similar to Ryan's in the context of pretrial bail. In particular, we have stated:

> when [the defendant] was released [pretrial] on his own recognizance and placed in home detention, he accepted the conditions that he now asserts to be the same as those generally applying to post-sentence home detainees. However, *he chose conditional liberty rather than to remain in jail*—in which case he would have earned more credit time.

*Lewis v. State*, 898 N.E.2d 1286, 1290 (Ind. Ct. App. 2009) (emphasis added), *trans. denied*. Likewise, when Ryan was released from incarceration on his appeal bond and not ordered to register as a sex offender, he accepted conditions that he now asserts to be the same as those generally applying to

post-incarceration defendants who receive credit time.  But, unlike those defendants, Ryan chose conditional liberty rather than to remain in jail or to register as a sex offender.[8]

[22]  Finally, we are not persuaded by Ryan's argument that the denial of his request for credit time will deter defendants from exercising their statutory right to petition the trial court for an appeal bond.  To the contrary, to accept Ryan's argument would only discourage trial courts from exercising their discretion to grant defendants appeal bonds with conditions attached.  And because Ryan had multiple avenues of review available to him regarding the conditions of his release, we reject his arguments that a denial of his request for credit time implicates due process or is fundamentally unfair.

[23]  In sum, we hold that Indiana Code Section 35-33-9-5(c) and Appellate Rule 18 prohibit an award of credit time for the time a defendant is released on an appeal bond, regardless of the conditions of the defendant's release.  *Cf. Kindred v. State*, 172 Ind. App. 645, 648-49, 362 N.E.2d 168, 170-71 (1977) (holding that the defendant had the right to surrender himself while released on his appeal bond in order to accrue credit time).  We also hold that, insofar as Ryan's arguments require this court to review the conditions of his release on his appeal bond, Ryan's challenge is untimely.  Ryan could have sought, but chose not to seek, immediate review of the conditions of his release pursuant to

---

[8] For the same reasons we rejected the defendant's Equal Protection and Equal Privileges and Immunities arguments in *Lewis*, we reject Ryan's arguments here.  *Lewis*, 898 N.E.2d at 1290-91.

Appellate Rule 18. Having forfeited that remedy, Ryan's challenge to the conditions of his release is now moot. Thus, we affirm the trial court's denial of Ryan's motion for credit time.

[24] Affirmed.

Kirsch, J., and Barnes, J., concur.