



FILED

May 17 2018, 2:40 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 49S02-1711-MH-688

## A.A.,

*Appellant (Respondent)*

–v–

## Eskenazi Health/Midtown CMHC,

*Appellee (Petitioner)*

Argued: December 19, 2017 | Decided: May 17, 2018

Appeal from the Marion Superior Court, No. 49D08-1609-MH-31348

The Honorable Steven R. Eichholtz, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 49A02-1610-MH-2286

**Opinion by Chief Justice Rush**

Justices David, Massa, Slaughter, and Goff concur.

**Rush, Chief Justice.**

Involuntary civil commitment, no less than imprisonment, is a tremendous intrusion on personal liberty and autonomy. Individuals under commitment may be confined against their will, restrained, forcibly medicated, and even kept in seclusion.

A person at risk of commitment, whose very liberty is at stake, is therefore entitled to vigorous due process protections—including the right to appear in person at a proceeding. That right is codified in Indiana Code section 12-26-2-2(b), which also gives the trial court authority to waive the individual's presence if appearing at the hearing would be injurious to the person's mental health or well-being.

Here, A.A.'s attorney waived A.A.'s right to personally appear. The hearing proceeded without him, and the trial court ultimately ordered involuntary civil commitment. A.A. appealed, arguing that the waiver violated his due process rights. To clarify uncertainty surrounding waiver of a respondent's right to appear, we reach several holdings.

First, a mentally competent civil-commitment respondent may relinquish the right to appear with a knowing, voluntary, and intelligent waiver; but an attorney may not waive the right on the respondent's behalf. Second, if the trial court independently waives a respondent's presence at a commitment hearing, it must do so at the outset of the proceeding. And, finally, an improper waiver determination is subject to harmless-error review.

Because A.A.'s presence was improperly waived and because that error was not harmless, we reverse and remand for the trial court to vacate the regular involuntary-commitment order.

## Facts and Procedural History

In August 2016, thirty-six-year-old A.A. lived with his mother, who grew concerned with his behavior and filed an application for emergency detention. The application stated that A.A. suffered from a psychiatric

disorder and that A.A. wasn't sleeping, was going outside and making disruptive noises, and wanted to fight family members.

Two days later, the trial court ordered A.A. detained and transported to Eskenazi Hospital. Eskenazi then filed the required report following emergency detention. In the attached physician's statement, Dr. David Pollock recommended regular involuntary commitment.

The trial court held a commitment hearing on September 12, 2016. At the beginning of the hearing, the trial court asked A.A.'s appointed counsel why A.A. wasn't there. A.A.'s counsel replied,

> I have been informed that [A.A.] is agitated. I have tried to call him before today's hearing to talk to him about his case. He would not answer the phone. I was informed this morning that he was not brought over due to him being agitated. So we are waiving his appearance today.

After Eskenazi's counsel confirmed that A.A. had received a summons, the trial court stated, "So, [A.A.] does have notice of the proceedings and he has chosen to waive his right to be present." The hearing proceeded without A.A.

Eskenazi's first witness was Dr. Pollock, who had last seen A.A. three days prior to the hearing. Dr. Pollock opined that A.A. suffered from schizophrenia and that because of his mental illness, A.A. was dangerous to others and gravely disabled. Dr. Pollock also described A.A.'s behavior since being detained—A.A. had been "menacing" and "aggressive" toward staff and had required restraints or sedatives at times. The doctor explained the side effects of recommended medication for A.A. and found it "highly doubtful" that A.A. would take the medicine voluntarily.

Dr. Pollock then testified about A.A.'s feelings regarding commitment. Dr. Pollock was aware that A.A. "had been talking about court," but did not know whether A.A. had "given an opinion one way or another" about being committed—just that A.A. had claimed "he doesn't need to be in a hospital."

Eskenazi next called A.A.'s mother to testify. She described her son's recent behavior, stating that she feared for her own safety. She also explained what could be "agitating" her son: A.A.'s father had recently died, and A.A. wouldn't be able to attend the funeral.

A.A.'s counsel, who had never met with or spoken to A.A., presented no evidence. At the end of the hearing, the trial court found that A.A. was a danger to others and gravely disabled by his schizophrenia. The court ordered regular involuntary commitment.

A.A. appealed, challenging his commitment order. He argued that the trial court accepted an invalid waiver of his right to appear, denying him due process.

The Court of Appeals partly agreed with A.A. Relying on its recent precedent, the panel held that, for competency reasons, "[a] respondent for a civil commitment hearing cannot voluntarily waive his right to be present at a commitment hearing." *A.A. v. Eskenazi Health/Midtown CMHC*, 81 N.E.3d 629, 632 (Ind. Ct. App. 2017) (citing *M.E. v. Dep't of Veterans Affairs (In re Commitment of M.E.)*, 64 N.E.3d 855, 860–61 (Ind. Ct. App. 2016)). The panel also decided that A.A.'s counsel could not waive A.A.'s presence and that the trial court "was too readily disposed to agree to waiver." *Id.* at 633.

But the Court of Appeals found no due process violation. *Id.* at 632–34. It noted that a trial court has statutory authority to waive a respondent's right to be present in certain situations—such as when the respondent's "presence would be injurious to the individual's mental health or well-being." *Id.* at 633 (quoting Ind. Code § 12-26-2-2(b)(3)(B)). The panel credited evidence in the record that A.A.'s presence would have been injurious to himself, but stressed that in future cases a trial court must make a statutory waiver determination at the outset of a civil-commitment hearing. *Id.* at 633–34. Explaining that a new hearing "would not provide any real service to A.A.," the Court of Appeals affirmed the regular involuntary-commitment order. *Id.* at 634.

We granted transfer,[1] vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

# Standard of Review

The parties collectively raise three issues about a respondent's right to be present at a commitment hearing. Specifically, we address (1) who can waive a civil-commitment respondent's due process right to appear; (2) whether a trial court exercising its independent statutory authority to waive a respondent's presence must do so at the outset of the commitment hearing; and (3) whether a failure to make a proper waiver determination

---

[1] Both A.A. and Eskenazi sought transfer, and we granted both petitions. As explained below, while Eskenazi had no basis for seeking transfer under our appellate rules, we exercised our broad jurisdiction to consider its petition.

Our appellate rules authorize parties aggrieved by an "adverse decision" from the Court of Appeals to seek transfer to our Court. Ind. Appellate Rule 56(B). Here, though, Eskenazi prevailed in both the trial and appellate courts. The trial court ordered A.A.'s civil commitment, and the Court of Appeals affirmed that judgment in full. Still, Eskenazi believes the appellate decision is adverse because its rationale creates potential mischief in how Eskenazi may have to conduct future commitment proceedings. In other words, although Eskenazi completely won, it didn't like the **way** it won.

Our rule of appellate standing from a trial court is clear. "A party cannot appeal from a judgment favorable to him." *Clark v. Stout*, 105 N.E. 569, 569 (Ind. 1914), *abrogated on other grounds by Clark v. Stout*, 183 Ind. 329, 108 N.E. 770 (1915). This same standing rule applies to appellate litigants seeking transfer to this Court. To state it another way, what counts for standing purposes is the Court of Appeals' judgment and not the reasons underlying it. The appellate decision was thus not adverse to Eskenazi.

Of course, Appellate Rule 56(B) does not limit the Court's **jurisdiction** to entertain Eskenazi's petition. We have "broad constitutional authority to exercise appellate review and oversight," *Tyson v. State*, 593 N.E.2d 175, 180 (Ind. 1992), in discharging our inherent "duty to act as the final and ultimate authority" in pronouncing Indiana law, *Troue v. Marker*, 253 Ind. 284, 288, 252 N.E.2d 800, 803 (1969). Transfer is merely the process by which the Court fulfills its law-giving function, and the Court may choose to exercise that function even in cases that do not comply strictly with the letter of the appellate rules for seeking transfer. *See Tyson*, 593 N.E.2d at 180. *Compare* Ind. Const. art. 7, § 4 ("The Supreme Court shall exercise appellate jurisdiction under such terms and conditions as specified by rules . . . ."), *with* App. R. 1 ("The Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules.").

is subject to harmless-error review. We evaluate these pure questions of law de novo. *See Hines v. State*, 30 N.E.3d 1216, 1219 (Ind. 2015).

# Discussion and Decision

Involuntary civil commitment is a significant deprivation of liberty—one that "goes beyond a loss of one's physical freedom" and engenders "serious stigma and adverse social consequences." *T.K. v. Dep't of Veterans Affairs (In re Civil Commitment of T.K.)*, 27 N.E.3d 271, 273 (Ind. 2015). Involuntary-commitment respondents thus enjoy due process protections, *id.*, including notice of the commitment proceeding and an opportunity to be heard, *see Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 950 (Ind. 2012).

The questions here center on A.A.'s due process right to be present and whether it was violated when his attorney waived his presence and the trial court agreed to the waiver. Though the issues seem straightforward at first glance, that impression hides an underlying web of constitutional and statutory matters. We address these interwoven matters in turn, beginning with whether a civil-commitment respondent can personally waive his right to appear at the commitment hearing.

## I.  A mentally competent respondent may give up the right to appear at a civil-commitment hearing through a knowing, voluntary, and intelligent waiver; however, the respondent's attorney may not waive the right.

A respondent has a due process right to be present at a civil-commitment hearing—a hearing that will address, in part, whether the individual suffers from a mental illness that requires involuntary commitment. This does not mean, though, that a respondent can never exhibit the mental competency to waive the right. Rather, appropriate safeguards can ensure a personal waiver was made knowingly, voluntarily, and intelligently.

Yet, a respondent's attorney may not waive the respondent's right to appear. The statute that codifies a respondent's due process right to appear gives the trial court independent authority to waive a respondent's appearance but bestows no waiver authority on an attorney.

## A. "Mental illness" and "mental competency" are not equivalent.

Eskenazi and A.A. both argue that the Court of Appeals below announced an overly broad rule: that a respondent, who necessarily faces a claim of mental illness as defined by statute, can never be competent to waive his right to be present at an involuntary-commitment hearing. *See A.A.*, 81 N.E.3d at 632. They contend that this rule perpetuates the wrong presumption that "mental illness" is always equivalent to "mental incompetency."

The broad holding stems from *M.E.*, in which another panel addressed in dicta whether an individual's written waiver validly forfeited his right to be present at his civil-commitment hearing:

> It is difficult, if not impossible, to see how an individual who is involuntarily detained under an emergency detention order by a mental health institution can be considered able to exhibit the competency required to sign a valid waiver in which he relinquishes his rights. The [hospital] cannot argue on one hand that someone is mentally ill and on the other hand that he is competent enough to sign a legal document. In other words, an individual cannot be considered so mentally ill that an emergency detention is ordered and a petition for regular commitment is filed but, simultaneously, competent enough that any waiver he may sign is validly obtained. Either an individual is competent, or he is not.

*M.E.*, 64 N.E.3d at 860–61.

We agree with the parties that *M.E.* conflates mental illness and mental competency, when Indiana law distinguishes between them. For purposes

of involuntary commitment, mental illness is defined as "a psychiatric disorder" that "substantially disturbs an individual's thinking, feeling, or behavior" and "impairs the individual's ability to function." Ind. Code § 12-7-2-130 (2017). Yet Indiana Code section 12-26-2-8(a) explicitly states that detention or commitment for a person with mental illness "does not deprive the individual" of the rights to, among other things, dispose of property, execute instruments, enter into contracts, and give testimony in a court of law. This statute shows that even when someone suffering from mental **illness** is under a commitment order, that person may still have the mental **competency** to perform important legal acts. *See generally Nichols v. Estate of Tyler*, 910 N.E.2d 221, 227 (Ind. Ct. App. 2009) (discussing the mental-capacity standard for entering into a contract for the sale of real property).

Indiana courts have likewise distinguished between mental illness and mental competency. For instance, in *Anderson v. State*, 699 N.E.2d 257, 260–61 (Ind. 1998), this Court rejected an argument that counsel was ineffective for failing to request a competency hearing for a defendant suffering from schizophrenia. In doing so, we refused to assume that evidence of mental illness would automatically lead to a determination of mental incompetency. *Id.*; *see also Hutchison v. State*, 82 N.E.3d 305, 312 (Ind. Ct. App. 2017) (distinguishing between mental illness and mental competency and citing several cases in support).

Because both the legislature and caselaw have distinguished mental illness from mental competency, we disapprove of *M.E.* to the extent it equates these terms. A court may not assume that a civil-commitment respondent is mentally incompetent just because the person is facing a claim of mental illness. What does this mean, though, for mentally competent respondents who want to waive their right to appear? It means that they may waive that right if certain conditions are met.

## B. Involuntary-commitment respondents may waive the right to appear if they are capable of voluntarily, knowingly, and intelligently making that decision.

We arrive at this conclusion by first turning to the statute codifying the due process right to appear at a civil-commitment hearing. Indiana Code section 12-26-2-2(b) recognizes the civil-commitment respondent's right "[t]o be present at a hearing relating to the individual," but the statute is silent on personal waiver of that right.[2]

This silence, though, does not mean that a trial court must refuse a mentally competent respondent's personal waiver of his presence at a commitment hearing. If it did, then the statutory **right** to be present would become a **requirement** to be present—a conclusion unsupported by the statute's plain language. *See Ind. Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 376 (Ind. 2017) (explaining that a court starts with the plain language of the statute and "may not add new words" to it). Rather, the nature of a "right" dictates that, as a general rule, the right to appear at a commitment hearing allows the respondent to decide that he does not, in fact, wish to appear. *Cf. GPH v. Giles (In re Commitment of GPH)*, 578 N.E.2d 729, 736–38 (Ind. Ct. App. 1991) (clarifying waiver of a respondent's codified due process right to counsel at a commitment

---

[2] We note that Indiana Code section 12-26-2-2 does not directly refer to the emergency detention statutes. The commitment statutes as a whole, however, make clear that the rights listed in that section do apply to preliminary and final hearings for respondents in emergency detention.

Once an individual is in emergency detention, and once the detaining facility files its required report, the trial court must quickly either order the individual released or set a preliminary or final hearing. I.C. §§ 12-26-5-8, -9. Both types of hearings involve determining whether temporary or regular commitment is appropriate. I.C. § 12-26-5-9(a)(2)(B), (a)(3)(B). And section 12-26-2-2's rights explicitly apply in both temporary and regular commitment proceedings—including ones that begin with emergency detention. I.C. §§ 12-26-2-2(a), -6-2, -7-1. So, once a preliminary or final hearing has been set for an individual in emergency detention, that individual is afforded the statutory rights in Indiana Code section 12-26-2-2, including the right to be present.

hearing when the statute recognized the right but was silent on personal waiver), *trans. denied*.

But recognizing a mentally competent respondent's ability to personally waive his appearance in a civil-commitment proceeding resolves just the first facet of the inquiry. The next question remains: what **procedure** must a trial court follow before accepting such a waiver? To answer this, we acknowledge certain realities of a civil-commitment proceeding—that the mental status of a respondent is necessarily at issue and that the State is exercising its *parens patriae* power.

As stated above, a civil-commitment respondent could exhibit the necessary competency to personally waive an appearance. Yet we are mindful that once an individual is at risk of commitment, that person's mental condition is necessarily at issue. *See* I.C. § 12-26-1-1. And, a respondent may suffer from **both** mental illness and mental incompetency. Accordingly, stringent safeguards are critical to guarantee that a respondent is capable of personally waiving the right to appear and, in turn, to guarantee the integrity of the proceeding as a whole.

Safeguards also bolster the State's ability to protect and care for a respondent. The Supreme Court of the United States has recognized that "[t]he state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves." *Addington v. Texas*, 441 U.S. 418, 426 (1979). If a commitment hearing proceeds without the respondent, the State's ability to exercise this power is hindered, as an individual's presence will often yield vital information on the most appropriate treatment plan.

Of course, these concerns are also implicated when a civil-commitment respondent wishes to personally waive other due process rights, such as the right to counsel. The Court of Appeals has addressed personal waiver in the right-to-counsel context, explaining that "a principal concern must be whether the patient is capable of making such a decision" and that the waiver must be made "knowingly, voluntarily, and intelligently." *GPH*, 578 N.E.2d at 737.

We likewise conclude that before a trial court accepts a respondent's personal waiver of the right to appear, it must ensure that the individual is capable of knowingly, voluntarily, and intelligently making that decision. This requires the trial court to expressly find those prerequisites on the record—though how that is done will depend on the particular circumstances of the case. In some cases, mental competency may be more doubtful, and the court may need to diligently observe and question the respondent in person. Other cases may not require such a deep inquiry. Regardless, before accepting a personal waiver of appearance, the trial court must find, through direct contact with the individual, that the respondent understands the nature and importance of the right, the consequences of waiving the right, the elements required to obtain an involuntary commitment, and the applicable burden of proof. *Cf. id.* at 736–38.  Direct contact may include, but is not limited to, contact made in person, by telephone, or via video call. However, a signed waiver of the right to appear, standing alone, will not suffice.

## C. An attorney may not waive an involuntary-commitment respondent's right to appear.

Nor can a respondent's attorney validly waive the respondent's right to appear. To be sure, inherent in the **respondent**'s right is the personal ability to choose whether to exercise it. But we will not infer **another**'s ability to waive the right—to do so would undermine the right itself.

Indeed, the legislature did not intend for waiver by attorney. Indiana Code section 12-26-2-2, which sets forth a civil-commitment respondent's right to appear at a hearing, does give the **trial court** independent authority to waive an individual's appearance:

> (b)  The individual alleged to have a mental illness has the . . . right[]:
>
>   . . .

(3) To be present at a hearing relating to the individual. The individual's right under this subdivision is subject to the court's right to do the following:

. . .

(B) Waive the individual's presence at a hearing if the individual's presence would be injurious to the individual's mental health or well-being.[3]

Notably missing is any provision giving waiver authority to an attorney, leaving us to conclude that waiver by attorney is not permitted. Two well-established rules of statutory construction inform our analysis.

Under the doctrine of *expressio unius est exclusio alterius*, "[w]hen certain items or words are specified or enumerated in a statute then, by implication, other items or words not so specified or enumerated are excluded." *State v. Willits*, 773 N.E.2d 808, 813 (Ind. 2002) (quoting *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 800 (Ind. 2001)). The legislature specifically allowed the trial court to waive a respondent's right to appear under narrow circumstances but provided no mechanism for an attorney to do the same. We thus infer that attorney waiver in the civil-commitment context is not permitted. And to ignore this implication and judicially construct an attorney-waiver standard would contravene another statutory-interpretation canon—that courts may not engraft additional or new words onto a statute. *See Kitchell v. Franklin*, 997 N.E.2d 1020, 1026 (Ind. 2013). Sidestepping these interpretive doctrines would trample on the role of the legislature and erode principles that uphold the separation of powers.

---

[3] The statute also gives the trial court the right to remove a respondent who "is disruptive to the proceedings." I.C. § 12-26-2-2(b)(3)(A). This provision recognizes the court's need to manage its courtroom and does not address waiver of an individual's appearance. In other words, it does not affect this case.

To reiterate, the right to appear is a **respondent**'s right. Limiting when that right can be waived by another—in this case, the trial court judge—ensures that those facing involuntary commitment are afforded their day in court. After all, these are some of the most vulnerable members of our society—those who are facing significant deprivations of liberty, such as confinement and forced medication orders. *See generally In re Mental Commitment of M.P.*, 510 N.E.2d 645, 646 (Ind. 1987) (recognizing that forced medication interferes with an individual's liberty interest). And stringently safeguarding the right to appear at a commitment hearing surely "has the function of reducing the chance of inappropriate commitments." *T.K.*, 27 N.E.3d at 273 (quoting *J.B. v. Midtown Mental Health Ctr.* (*In re Commitment of J.B.*), 581 N.E.2d 448, 450 (Ind. Ct. App. 1991), *trans. denied*).

In sum, Indiana Code section 12-26-2-2(b) recognizes that the respondent has a due process right to appear at a civil-commitment hearing; it does not force the respondent to exercise that right. Because the respondent's appearance is a right and not a requirement, a mentally competent respondent may choose to relinquish the right through a knowing, voluntary, and intelligent personal waiver. The respondent's attorney, however, may not waive the right.

Here, the record is clear—A.A. did not personally waive his appearance, and the statute does not permit waiver by A.A.'s attorney. Still, Eskenazi argues there was no due process violation, pointing to the trial court's independent statutory authority to waive a respondent's appearance if his "presence would be injurious to [his] mental health or well-being." I.C. § 12-26-2-2(b)(3). A.A. recognizes this authority but contends that the trial court never exercised it. The parties' disagreement on the issue partially rests on the timing of a statutory waiver determination, which we address next.

## II. A trial court must make a statutory waiver determination under Indiana Code section 12-26-2-2(b)(3)(B) at the beginning of a civil-commitment hearing.

Both parties recognize that the trial court can waive a respondent's right to appear at a commitment hearing if the respondent's presence would be injurious to his mental health or well-being. The parties dispute, however, **when** the trial court must make this statutory determination. A.A. believes it must be made at the outset of a civil-commitment hearing, while Eskenazi contends that a trial court should be allowed to listen to all relevant evidence before making a waiver decision.

Although Indiana Code section 12-26-2-2(b)(3)(B) plainly lists the "injurious" waiver standard, the statute is silent on timing. Again guided by statutory-construction principles, we conclude that the court must exercise its independent waiver authority at the beginning of the proceeding.

In addition to a respondent's right to appear at a commitment hearing, Indiana Code section 12-26-2-2(b) codifies three due process rights: the right to notice of a hearing, the right to a copy of the petition, and the right to counsel. I.C. § 12-26-2-2(b)(1), (2), (4). The organization of these rights is significant and leads to an oft-cited canon of statutory interpretation: to determine the legislature's intent in drafting a statute, we must consider the "structure of the statute as a whole." *Spirited Sales*, 79 N.E.3d at 376.

When viewed as a whole, Indiana Code section 12-26-2-2(b) lists some, but not all, due process rights applicable to commitment proceedings. *See In re Commitment of Turner*, 439 N.E.2d 201, 203 (Ind. Ct. App. 1982) (referencing Indiana Code section 12-26-2-2's predecessor and listing the "procedural due process rights" it codifies). For example, the rights to present evidence and cross-examine witnesses are listed in the next section, Indiana Code section 12-26-2-3. And the "clear and convincing" standard of proof for civil-commitment proceedings—the standard required to satisfy due process—is found in Indiana Code section 12-26-2-5(e). *T.K.*, 27 N.E.3d at 273.

We believe that this grouping of certain due process rights in Indiana Code section 12-26-2-2(b) was deliberate. They share a common temporal characteristic—they attach before a commitment hearing, and their utility decreases or even disappears if a respondent cannot exercise them in a timely manner. The rights to notice of the hearing and to a copy of the petition are futile unless they apply before the proceeding. The right to counsel likewise has limited worth if a respondent cannot exercise it before a hearing begins. And the right to appear obviously loses its value as a proceeding continues in a respondent's absence. In other words, these rights are triggered before the trial court hears substantive evidence on whether commitment is necessary.

Eskenazi doesn't dispute that a respondent's right to appear applies from the beginning of the hearing, but argues that no limitation should be imposed on when waiver must occur. It reasons that placing the waiver determination at the outset of a hearing would be unduly restrictive and would fail to recognize that evidence presented later in the proceeding could inform a waiver analysis.

This position, though, compromises the statute's objective, which is to protect civil-commitment respondents by codifying some of their due process rights. A respondent's right to appear—which is implicated before the proceeding begins—would not be adequately protected if the trial court conducted the entire hearing before waiving the individual's presence. Furthermore, waiver at the end of the hearing would lead to a significant waste of judicial resources. A trial court could conduct a commitment hearing only to conclude that the "injurious" waiver standard wasn't met. In that situation, the trial court would have to redo the entire proceeding with the respondent present. We must "presume[] that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Prewitt v. State*, 878 N.E.2d 184, 186 (Ind. 2007). And accepting Eskenazi's argument would run afoul of that presumption. Accordingly, a trial court's waiver determination under Indiana Code section 12-26-2-2(b)(3)(B) must be made at the outset of the proceeding.

Eskenazi is right, of course, that the same evidence **may** be relevant to both the statutory waiver decision and the ultimate involuntary-commitment decision. When that happens, a trial court can hear evidence about waiver at the beginning of the hearing and then incorporate it into its later decision on commitment.[4] This procedure not only conserves judicial resources but also stringently protects a respondent's due process right to appear at a commitment hearing.

Still, in some instances a trial court may fail to make a proper statutory waiver determination and the hearing nevertheless proceeds without the respondent. Below, we address how to analyze such an error and then apply that framework to the specific facts of this case.

## III. Failure to make a proper statutory waiver determination under Indiana Code section 12-26-2-2(b)(3)(B) is subject to harmless-error review.

In the criminal context, the Supreme Court of the United States has classified certain constitutional errors as "structural" because they "affect[] the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). Since structural errors affect "[t]he entire conduct of the trial from beginning to end," they cannot be deemed harmless. *Id.* at 309–10. Many other constitutional errors, however, are

---

[4] A.A. contends that the Court of Appeals authorized the use of "unverified" pretrial filings for the waiver determination, since the opinion provided,

> [E]vidence must be presented to the trial court establishing that the respondent's presence would be injurious to his mental health or well-being. In other words, evidence must address the specific components of the statute. This evidence may incorporate by reference documents such as the application for emergency detention, the report following emergency detention, and the physician's statement.

*A.A.*, 81 N.E.3d at 634. Eskenazi disagrees, arguing that the panel simply recognized that if a party wished to use a pretrial filing, it would need "foundational, admissible evidence to **incorporate** those filings." We agree that Eskenazi's reading reflects proper evidentiary procedure.

subject to harmless-error review, because they can be "assessed in the context of other evidence presented" to determine if they are "immaterial." *Id.* at 308.

A.A. argues that the failure to make a proper waiver determination under Indiana Code section 12-26-2-2(b)(3)(B) is structural error, and thus not subject to harmless-error review. He contends that this type of due process deprivation—conducting a commitment hearing in a respondent's absence without first finding that his presence would be injurious to his mental health or well-being—affects the entire framework of the proceeding. While we agree that such a constitutional error is significant, it is not structural.

As explained above, when the trial court exercises its waiver authority in involuntary-commitment cases, it makes two determinations. First, at the outset of the hearing, the court determines whether the respondent's presence would be injurious to the respondent's mental health or well-being. I.C. § 12-26-2-2(b)(3)(B). Second, the court determines whether the respondent is mentally ill and either dangerous or gravely disabled, as part of the commitment decision. I.C. § 12-26-2-5(e). The same evidence could be relevant to both determinations.

When the evidence does overlap, an erroneous waiver can be "assessed in the context of other evidence presented," *Fulminante*, 499 U.S. at 308. In other words, it's possible that a trial court could improperly waive a respondent's presence, but then hear evidence that both supports a commitment order and satisfies the "injurious" waiver standard. In such a case, the error would not affect the commitment proceeding from beginning to end—rather, had the trial court followed the proper procedure at the outset of the hearing, there would have been evidence to support waiver of the respondent's presence. That is to say, the error would ultimately be harmless.

To be clear though, harmlessness depends not on whether evidence supports commitment, but on the extent of record evidence supporting waiver. And waiver focuses on why **being present at the proceeding** would be injurious to the respondent's mental health or well-being. Often, evidence on mental illness or dangerousness or grave disability—which

are relevant to the main issue of commitment, *see* I.C. § 12-26-2-5(e)—will inadequately address how appearing at the hearing would affect a respondent.

That is precisely what happened here. A.A. has never challenged the evidence supporting his commitment. Rather, he has maintained that the evidence that could point to dangerousness fails to show that his presence in court would have been injurious to his mental health or well-being. For its part, Eskenazi asserts that additional evidence does support waiver, since bringing A.A. to court "against his will" and possibly having to physically suppress him due to his violent tendencies would be injurious to A.A.'s mental health or well-being. We agree with A.A.

The only evidence about why A.A. wasn't present at his involuntary-commitment proceeding was his attorney saying, "I was informed this morning that [A.A.] was not brought over due to him being agitated." After hearing this, the trial court found A.A.'s presence waived and heard substantive evidence on commitment. That evidence included testimony on A.A.'s intimidating actions towards staff (on days **prior** to the hearing) and his inability to take care of his own needs. Contrary to Eskenazi's argument, we simply do not know why A.A. was agitated that day or what it would have taken to bring him to court. Missing from the record, then, is any evidence that A.A.'s presence at his own commitment hearing would have been detrimental to him. Rather, we know only that A.A. was aware of his hearing and did not want to be committed—an opinion he couldn't express to the court because he wasn't there.

This highlights the importance of a respondent's right to appear at an involuntary-commitment proceeding. If present, A.A. could have voiced concerns on issues like adverse side effects of forced medications; assisted his counsel in cross-examining witnesses, such as family members; and offered mitigating evidence. These possibilities bolster our conclusion that

the failure to make a proper waiver determination was not harmless. For that reason, we remand to the trial court to vacate the commitment order.[5]

## Conclusion

This case highlights the importance of due process protections—particularly the right to appear—for those at risk of involuntary commitment. Today, we hold that a respondent can personally waive the right to appear if the waiver is knowing, intelligent, and voluntary; but the respondent's attorney cannot waive the right by proxy. Further, if a trial court independently waives a respondent's presence, it must do so at the beginning of the proceeding. And, finally, an improper waiver determination is subject to harmless-error review.

Here, the trial court did not make a proper waiver finding at the outset of A.A.'s involuntary civil-commitment hearing. We conclude the error was not harmless, given the lack of evidence on whether A.A.'s appearance would have been injurious to his mental health or well-being. For that reason, we reverse and remand to the trial court to vacate the commitment order.

David, Massa, Slaughter, and Goff, JJ., concur.

---

[5] The record does not reveal A.A.'s current situation. If A.A. is under a regular involuntary-commitment order stemming from his mother's August 2016 application for emergency detention, then he will no longer be subject to that order. However, the parties are reminded not to take any action in reliance upon this opinion until its certification. App. R. 65(E).

ATTORNEYS FOR APPELLANT

Ruth A. Johnson
Deborah B. Markisohn
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

Jessica Proctor Barth
Julie M. Conrad
Eskenazi Health Legal Services Department
Indianapolis, Indiana